BAGGETT *et al. vs.* TRULOCK.

1. A conveyance of land made nominally in payment of an usurious debt, but really as security for its payment, and in pursuance of an agreement by the creditor to reconvey on such payment, is tainted with usury, and therefore void.

2. To stop interest by its own name, and continue it under the name of rent, is one of the most common devices to cover up usury.

3. Where the creditor is the only witness, and his testimony touching the usurious element of the contract bears two constructions, the one least favorable to his interest should generally be adopted.

February 26, 1887.

Interest and Usury. Title. Deeds. Evidence. Witness. Before Judge BOWER. Decatur Superior Court. May Term, 1886.

G. B. Trulock filed his bill against W. F. Baggett and his wife, Martha J. Baggett, alleging, in brief, as follows: W. F. Baggett purchased from one Harrell ten acres of land, described as being in lot number 30 of the 19th district of Decatur county. The line of the lot sold was described as a line which had been long recognized as a boundary between lots 30 and 29. In 1882, Baggett made a deed to complainant to the same land. Subsequently the surveyor made a survey of the line between the two lots, and it was discovered that eight acres of the land were really in lot 29, which was owned by one Lodge. Thereupon Harrell, the warrantor of Raggett, tendered him the money to pay for the eight acres, but Baggett refused to receive it, and for the purpose of defrauding complainant, confederated with his wife, and gave her his own money with which to buy the land from Lodge, which she did, and took a deed in her own name. Both of them are insolvent. The object of the bill was to have this deed declared void, and the eight acres decreed to be the property of complainant; and injunction and receiver were prayed for the meantime. Attached to the bill as exhibits were the deed from Baggett to the complainant, dated

v 77-24.

December 30, 1882, for the expressed consideration of $450, and the deed from Lodge to Mrs. Baggett, dated August 20, 1883, for the expressed consideration of $80.

The defendants answered separately, alleging, in brief, as follows: When Baggett purchased from Harrell, it was known that there was a dispute about the lines, and that they were unsettled, but Harrell said he thought he was right, and at all events would protect Baggett's title to the land. Baggett was indebted to complainant upon a usurious contract, bearing interest at the rate of twelve per cent. and amounting to about $450, and the deed under which the complainant claimed was made to secure this indebtedness. Being tainted with usury, it was void. At the time of its making, the complainant was apprised of the facts with reference to the disputed lines, and took with knowledge thereof. Both defendants denied any fraud or collusion, or any tender by Harrell, or that Mrs. Baggett purchased from Lodge with the money of her husband, and asserted that she purchased in good faith with her own money from the true owner of the title for the purpose of procuring a home. They say that Harrell had ample opportunity to have purchased the land before she did so.

On the trial, the complainant was introduced as a witness on his own behalf and testified, in brief, as follows: The land was enclosed, and the fence of Baggett was on what was considered as the line between lots 29 and 30. When complainant took the title, he did not know that there was a dispute as to where the lines were. There has been a good deal of talk about it since and some little before, but he never thought anything about it, but thought the lines would stand. He remembered saying that he would risk the title; did not remember saying that if it was not good he would look to Harrell on his warranty, but would not swear he did not say so; did not know of his own knowledge that Harrell tendered the money to pay for the eight acres. It was not considered to be worth

more than $100; the whole was worth about $400. It was the understanding between the parties that the land was to be paid for and revert. Harrell never re-bought. Mrs. Baggett bought from Lodge; her husband was working on the railroad, and complainant knew of no separate estate she had. One Davis held an indebtedness against Baggett for the purchase money of the land, secured by mortgage, which complainant took up at the instance of Baggett, and the latter became indebted to him. The mortgage and notes bore ten or twelve per cent. interest. Subsequently Baggett made complainant the deed for the indebtedness; "in other words, he made me a title to the land for the purchase money." Complainant then rented the land to Baggett and took a rent note, a portion of which has been paid. He thinks the notes were given back to Baggett, but does not remember. The deed was made to secure him for the indebtedness. He agreed that if the debt, with interest at ten or twelve per cent. (he did not remember certainly which), was paid to him, he would reconvey the land to Baggett. When the deed was made, Baggett asked him for a bond for title, but he replied that whenever he was paid, he would make Baggett a warranty title; that his word was his bond. No payments have been made on the indebtedness. There was no written contract as to the interest, except in the face of the note originally given, and complainant has not received any notes for the debt. He does not think that any agreement was made about interest after the deed was made, but does not remember. The agreement was that Baggett was to pay him back the money, with ten or twelve per cent., before complainant would reconvey to him.

There was other testimony, as to the lines, improve ments, etc., which need not be stated in detail.

The complainant was re-introduced as a witness, and testified that the deed was made to him in payment of the indebtedness; that he did not want the land; and that he told Baggett that, if he would pay him back his princi-

pal, he could have the land; that he meant that the ten or twelve per cent. was the amount charged in the original Davis indebtedness; that no intersst at al was charged after the deed was made to him; and that he rented the land to Baggett. He was asked, "He (Baggett) gave you this deed to secure that debt, and you agreed to make him back a deed when he paid you that debt?" and answered, "Yes, sir." He was asked also, "After you took up that deed from Davis, did you have any interest on it, didn't that rate of interest run on in your favor after that?" and answered, "I don't know whether I took new notes altering the rate of interest or not." He did not remember how' long after he took up the Davis debt before new papers were made to him. He was asked, "Wasn't that deed given to secure that note (one of the Davis notes) and the other indebtedness to you?" and answered, "I don't know." . The land was taken in payment of the notes. He was asked, "Wasn't that deed made to secure the debt?" and answered, "I didn't look at it in that way; I gave him that privilege to redeem the land, and the agreement was that I would sell him the land." Complainant told Baggett, before the signing of the deed by the latter, that upon payment to him, he would make a deed back; he thought, just after the justice witnessed the deed from Baggett, the latter demanded a bond for titles from him, and he replied as already stated.

After verdict for the complainant, the defendants moved for a new trial on the ground that the verdict was contrary . to evidence and the weight of the evidence and the principles of equity and justice. The motion was overruled, and they excepted.

D. A. RUSSELL; A. L. HAWES, for plaintiffs in error.

R. R. TERRELL; O. G. GURLEY, for defendant.

BLECKLEY, Chief Justice.

.. Trulock obtained a deed from Baggett conveying to him certain land. The question afterwards arose as to

whether the deed was taken in payment of a debt, or as security for its payment.

The debt had usury in it. Trulock contended that the deed was taken in payment, but he was the witness, and he testified that before he received the deed, he agreed that he would convey the land back on payment of the debt. There was something said about his giving a bond for titles, but he replied, his word was his bond; and so no bond for titles was given; but he does not dispute that at or before the time the deed was delivered to him, he agreed that upon payment of the debt, he would reconvey the land to the maker of the deed, his former debtor. He also took a note for the rent of the land. The jury found that the deed was a payment; and the court refused to grant a new trial. We think that, taking the evidence of Mr. Trulock himself, it was not a final payment and did not discharge the debt. It was only a colorable payment; in reality a security, and the legal signification of the transaction was that the usury affected the deed, and that he obtained no title. A conveyance of land made nominally in payment of an usurious debt, but really as security for its payment, and in pursuance of an agreement by the creditor to reconvey on such payment, is tainted with usury, and therefore void.

2. To stop interest by its own name, and continue it under the name of rent, is one of the most common devices to cover up usury. The note for rent only serves to color the transaction a little more plausibly.

3. Where the creditor is the only witness, and his testimony touching the usurious element of the contract bears two constructions, the one least favorable to his interest should generally be adopted. Mr. Trulock's testimony seems to be in conflict with itself, but its true legal interpretation as a whole is not difficult.

Judgment reversed.