## BEACH *v.* LATTNER.

1. Where a deed, executed as security for the payment of a promissory note, is assailed as usurious, the usury alleged to have been taken consisting of a certain bonus paid by the maker to the payee of the note in excess of the lawful rate of interest, and a third person to whom the note and security deed are transferred seeks to uphold the transaction by showing that such third person was the real lender, and that the payee of the note was a mere intermediary, the bonus exacted being by way of compensation to the latter and in no manner participated in by the former, the question of usury depends upon whether such third person was in fact the real lender; and upon this issue of fact, a recital in the conveyance by which the security deed is assigned to such third person, to the effect that she was a purchaser of such note and security from the alleged intermediary, affords such evidence as would support a finding by a jury that her true relation to the transaction was that of purchaser of the note and deed from the nominal payee, and that the latter was the original lender; so that as a consequence, the transaction resulting in the execution of the security deed was usurious.
2. A grantee in a security deed tainted with usury, can not, as against the maker thereof, convey a good title even to a person who takes bona fide, before maturity, for value, and without notice of the fact of usury.
3. While the right to amend pleadings may, subject to such terms as the judge may properly impose, be exercised at any stage of the case and even after the time when the jury has retired to make up their verdict, yet where an amendment to an answer setting up a new and distinct ground of defense is at such time merely filed and allowed, but never submitted to or acted upon by them, and no request to that effect is made, such amendment should not be considered in testing the legality or validity of the verdict and judgment.
4. Though the application of the well-settled rule that the maker of a deed given to secure the payment of a promissory note tainted with usury is not, without paying or tendering the principal and lawful interest due thereon, entitled to an equitable decree for a cancellation of the deed, would have defeated the plaintiff in the present case, if the defendants had made the proper defense in due time, yet as this was not done and the cause was tried and determined exclusively upon another issue, the verdict and judgment, allowing the plaintiff the equitable relief prayed for, may lawfully stand.
5. Taking into view the entire record, a result authorized by the pleadings and evidence as they stood when the verdict was returned was reached, and therefore no good reason for reversing the judgment below appears.

Argued April 17,—Decided June 10, 1897.

Equitable petition. Before Judge Kimsey. Hall superior court. January term, 1896.

*Anderson, Anderson & Grace, G. H. Prior* and *L. D. Puckett,* for plaintiff in error.

*H. H. Dean, Boyd & Lilly* and *C. D. Phillips,* contra.

LITTLE, J.  A number of grounds were set out in the motion for a new trial.  We have not deemed it necessary to consider more of them than are indicated in the headnotes preceding this opinion.

The plaintiff in error sought, under the exercise of a power of sale given in a certain deed made by the defendant in error to the Georgia Loan & Trust Company and its assigns, to subject the land conveyed by that deed to the payment of three promissory notes, each for the principal sum of five hundred dollars, together with interest on the same at the rate of eight per cent. per annum from the date of the notes, April 1, 1889. The defendant in error met this proceeding with an equitable petition, whereby she sought to enjoin such sale and have the deed canceled on several grounds therein set out.  But the one relied on, and the only one on which the case was tried, was that the deed was infected with usury, and therefore void. The plaintiff in error denied the usury; the point in issue being, whether the plaintiff in error was in law the original lender of the money.  Because of rulings heretofore made by this court in construing our statute which governs, a brief summary of the facts as they appear in the record, relating to this point, will be of assistance in the application of the legal principles which will determine the case.

Mrs. Lattner, through negotiations with a local agent, arranged to borrow fifteen hundred dollars, for which, on April 1, 1889, she executed her three notes for five hundred dollars each, bearing interest from date at eight per cent. per annum, and on the same day executed and delivered a deed conveying title to certain farm lands as security for the payment of the notes.  The deed was made under the provisions of § 1969 et seq. of the Code of 1882, and vested power in the grantee, its successors and assigns, on default in the payment of principal

or interest, to sell the land and apply the proceeds to the payment of the debt. The notes were made payable to the Georgia Loan & Trust Company, and it was also the grantee in the deed. The money which the grantor received was furnished by the Georgia Loan & Trust Company under the following circumstances: Mr. Puckett was the correspondent of the company at Gainesville, and the defendant in error applied to him to secure the loan for her, agreeing to pay him out of the amount of the loan a certain per cent. of the principal, for his services in securing the loan. He forwarded the application to the company, and the latter, having completed satisfactory arrangements with Puckett as to the division of his commissions with it, had the papers prepared, sent them to Puckett for execution, with a check drawn by itself on the Chemical National Bank of New York for thirteen hundred and eighty dollars, which was collected by Puckett. Under the arrangement previously made with the borrower, Puckett was to receive twelve per cent. of the gross amount of the loan, which was divided between himself and the company, the latter receiving eight per cent., or one hundred and twenty dollars, and the former four per cent., or sixty dollars. Under this arrangement, Mrs. Lattner received thirteen hundred and twenty dollars from proceeds of check sent by the company to Puckett. The company has agents in a number of counties in Georgia, who find borrowers; and also correspondents in the east, who find investors. The money which was drawn against in New York to consummate this loan, was money placed in the Bank by Burr & Knapp, of Bridgeport, Conn., to the credit of the Georgia Loan & Trust Company. When the executed papers were returned to the company, they were forwarded to Burr & Knapp, who acted as agents for the loan company. Prior to the execution of the papers, Mrs. Beach had on deposit with Burr & Knapp $1,500.00 for investment. This was deposited on March 1, 1889, upon which she was to be paid interest at the rate of eight per cent. until a *satisfactory* Georgia mortgage could be furnished her. She accepted the mortgage of Mrs. Lattner, and the papers were transferred to her on May 8, 1889, she paying for the same the amount of $1,512.00, being the principal and interest which had accrued to that date.

1. Our code declares that all titles to property made as a part of an usurious contract, or to evade the laws against usury, are void. Civil Code, § 2892. The underlying question in the case, the answer to which will establish the fact whether this particular contract was or not usurious, is, was the plaintiff in error the real lender of the money borrowed by the defendant? If she was, then the verdict and decree are wrong, because the evidence affirmatively shows that she paid the full amount of the principal and accrued interest of the notes. If she was not, but on the contrary the company was such lender, then under the facts it must be held that the contract was usurious. There are several adjudications of this court which have been invoked by counsel to establish the proposition that in law she was the original lender, and to such of these as we consider it necessary we will briefly refer. Our attention has been called to the case of *Merck* v. *American Freehold Land Mortgage Co.*, 79 *Ga.* 213. The two points determined in that case, which are necessary to be considered now, are, (1) that the fact that a borrower contracts with one engaged in the intermediary business of procuring loans, to pay him out of the loan for his services, and does so pay him, will not infect the loan, the lender having no interest in such intermediary business or its proceeds; and (2) by using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them, the lender does not constitute them his agents to make the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown. We give full effect to the rulings in this case, and accept the propositions laid down as being correct under the reported facts of the case.

The next case to which our attention is called is that of *Hughes* v. *Griswold*, 82 *Ga.* 299, which, recognizing the propositions laid down in the case of *Merck*, supra, goes further and holds, where the money actually lent belonged to none of the middlemen engaged in procuring the loan, the fact that the notes and mortgage were made payable to one of them who

shared in the commissions paid by the borrower will not infect the loan with usury, the lender knowing nothing touching the payment of or agreement to pay commission, and having acted in person in contracting to make the loan, fixing the terms thereof, accepting the security, and having parted with the full amount of the loan, delivered the money to one of the middlemen engaged in procuring the loan. In that case the middlemen did not in fact lend the money; the record shows the following in relation to the actual lending of the money: Griswold was a farmer, with money to invest. He called at the office of Moore & Co., Hartford, Conn., where the application and abstract of title of Hughes was lodged seeking a lender. After examination of these papers, Griswold agreed to make the loan, and then Moore & Co. wired another intermediary, Lawton, in Macon, Ga., to close the same. This loan was closed by Lawton, and on execution of the papers, Lawton paid over to Hughes the amount represented in the promissory notes, less the commissions which had been agreed on between himself and Hughes, and at once drew a draft on Moore & Co. against Griswold's fund, to reimburse him the money which he had substituted for that of the lender. But before the borrower received any money at all, Griswold, in Connecticut, had agreed to make the loan and arranged with the intermediary to pay it over to the borrower. What followed was but a simple transfer of money from one to the other, so as to make good the amount which Lawton, the intermediary, had turned over to Hughes on account of the lender, Griswold; the proof showing that Griswold parted with the full amount represented by the notes; and while this amount when it reached the hands of the borrower was diminished under a contract made between the borrower and the intermediary, who retained by the borrower's consent the commissions agreed on, no part of these commissions went to Griswold; and what this court held in that case was, that such a transaction was not infected with usury; the reason it was not so infected was, that Griswold was the lender, he actually made the loan, and furnished the full amount called for by the notes, in exchange for the contracts.

The next case to be considered, is that of *Stansell* v. *Georgia Loan & Trust Co.*, reported in 96 *Ga.* 227. In that case the court, after announcing that substantially the same state of facts was shown as existed in the case of *Hughes* v. *Griswold*, ruled that the jury were warranted in finding that the notes sued upon were free from usury.

We may therefore take it as established by the foregoing rulings of this court, that the commissions charged by a middleman under a contract with a borrower to procure him a loan do not render the loan usurious, when such middleman, after having found a lender, turns over to the borrower the amount represented in the promise to pay, less the commissions which he had agreed to pay, the lender in no way participating in or deriving any benefit from such commissions, even though, when the commissions retained be subtracted from the named principal, it appears that the interest contracted to be paid exceeds the rate of eight per cent. per annum on the actual amount received by the promisor. It seems to be further established by the cases referred to, that when, through the services of a middleman, a lender has been found who agrees to make the loan on an inspection of the papers, and authorizes the intermediary to close it, the fact that the intermediary closes it in obedience to such instructions and takes payable to himself, as a temporary arrangement, the notes representing the amount of the loan, and title in himself to the property given as security, and also, for the time being, substitutes for the funds of the lender, deposited in a distant State, necessary funds of his own for the purpose of closing the loan, these things do not of themselves render the contract usurious. To this extent, and no further, has this court gone in ruling on the subject. Speaking for myself, it has gone quite far enough, to be within the pale of our law as I construe it.

The facts of this case distinguish it from any of those referred to. As in those cases, here was an intermediary. That intermediary was a correspondent of the Georgia Loan & Trust Company. The latter company, according to the evidence, forwarded the application made to the east. It seems that the plaintiff in error desired to make an investment in the way of

a loan secured by farm lands in Georgia; and in furtherance of this purpose, she had deposited with Burr & Knapp the sum of $1,500.00, with which it was understood she would, when an opportunity presented itself, make an investment of this character, which should be satisfactory to her. It can not be contended that she intended to make *this* loan, because the money was deposited a month before the papers were executed. What she desired to do was to lend the sum of $1,500.00 on farm lands in Georgia, when she could be assured and satisfied that it would be made according to her wishes. It was not her purpose to make any particular loan, but to judge of those which were submitted, and make her selection. The application was examined by the correspondents of the company, and appearing to be a desirable loan, the company closed it and furnished its own money to the borrower and took from her promissory notes payable to itself, secured by a deed to land in which deed it was the grantee; at the same time it retained eight per cent. on the principal amount as the part of the commissions which it had been agreed should be paid to it by the first intermediary who received the application. One difference between this and all the other cases is, that at the time the money was received by the borrower and she had executed her promises to pay, and pledged her property as security, there was no person or corporation other than the company who *could* stand in the relation of lender to the defendant in error; no one had agreed to take *that* loan; no one's money had been deposited to make this particular loan; and yet the contract of borrowing and lending had been consummated, and there had been created a named debtor and creditor. The contract was an entirety, complete in all its parts, and nothing remained to be done to make it valid and binding. Being so, who was the lender? The answer must be that it was the loan and trust company. Subsequently to the consummation of the loan, the notes and security deed were forwarded to Bridgeport, Conn. At a convenient time the plaintiff in error was notified to come and examine these and other papers, and when she came, after an examination, she decided to take these notes and the deed as security. This was one month and seven days

after the original contract had been closed; and not until then, even under the theory of the plaintiff in error, had she consented or agreed, or authorized any one to consent or agree for her, that she would become the lender of this money.   When she agreed to take *these* papers as her investment, the promissory notes were transferred to her by the loan and trust company, and all their rights and interest under the security deed assigned.   This occurred on May 8th; the date of the original transaction between the defendant in error and the loan and trust company was April 1, 1889.   Further than that, the testimony shows that on the 1st day of March, 1889, Mrs. Beach deposited $1,500.00 with Burr & Knapp, to be retained by them until a satisfactory Georgia mortgage could be furnished her.   Upon this sum Burr & Knapp agreed to and did pay her eight per cent. interest until the 8th day of May, 1889, when, after inspection, she concluded to accept the notes and security deed of the defendant in error; and H. M. Knapp of that firm testifies that she *paid for the same* the amount of $1,512.00, being the amount of the loan and accrued interest to that date. This was a purchase by Mrs. Beach of these notes, a plain and simple contract of bargain and sale; and in no aspect of the case can she be considered as a lender of the money to defendant in error.   If it were otherwise, no distinction between a contract of lending and a contract of purchase from the lender of his evidences of debt would exist.   But if not conclusive of this question, under the facts, it is certainly sufficient to support a ruling that the plaintiff in error was not the original lender, to note that the Georgia Loan & Trust Co., on the 21st day of August, 1895, executed a deed of conveyance to Laura J. Beach, reciting a consideration of $1,500.00 paid by Mrs. Beach and conveying to her the lands described in the deed from the defendant in error to the loan and trust company, being the deed executed at the time of the consummation of the loan in 1889.   This deed to Laura J. Beach recited that it was made for the purpose of transferring and conveying to her all the rights and title of the company in and to the land aforesaid, and all of the company's rights and powers under the deed of the 1st of April, 1889, by Mrs. Lattner, which was made to se-

cure the payment of the promissory notes given for the loan. It further recited that the deed was recorded in the office of the clerk of the superior court of Hall county, and that the notes therein described *have been sold and transferred by said company to the said Beach.* We are bound to and do rule that, under these facts, the jury was justified in finding that the plaintiff in error was not the original lender to the defendant in error, but that the Georgia Loan & Trust Company was; and it being admitted that that company in making this loan reserved a greater sum for the use of the money than the legal interest, the contract was, in consequence, usurious.

2. The security deed in this case having been made to the Georgia Loan & Trust Company, and that company having transferred the same to the plaintiff in error, assigning all its rights and powers to her, and having further subsequently executed a formal deed conveying to her the land for the purposes for which they held it, and giving to her the rights it had, the question arises, what title or security did she receive by such assignment of the first and the execution of the later deed? As before stated, titles to property, made as a part of an usurious contract, are by direct legislation declared to be void. Our construction of the law applicable to the facts of this case places the notes given for the borrowed money in this class of obnoxious agreements, and the deed which passes the title as a pledge for their payment must fall under the ban of the law. We are not now concerned with the application, or, more correctly speaking, the interpretation proper to be given to this provision of the law, when the substantial rights of third persons who in good faith, without knowledge or notice, and in advance of the time of payment, have become involved. As to them, well-settled principles of equity have been invoked to limit the operation of the statute. Nor are we here to discuss the power of a stranger to the contract to invoke its provisions, although it is a sound principle of law that the defense of usury is a personal privilege. Under the law, notwithstanding the notes represent an usurious contract, *they* are not void, but are collectible as to the principal, with legal interest; but the same element of validity does not attach to the deed. In

this case the deed was directly made as a part of the contract; indeed it was executed to secure an amount which included the excess of legal interest on the principal. The defendant in error was not a stranger to this contract, but was the maker of the instrument which secured it. When it went into the hands of the Georgia Loan & Trust Company, the statute declared it then void. Being so, the loan and trust company could vest in no one title to the property thereby conveyed, or any benefits under the original conveyance. A void deed has no force or effect anywhere or on any occasion, when the circumstances render it capable of attack. It was not a negotiable instrument. The title to the property could not get into the hands of a bona fide holder by transfer or assignment of the deed. It purported to convey title to a particular person, and a purchaser from that person could take only the title the original grantee had. If he had none, his grantee could take none. If it was void in the hands of the grantee, nothing could flow from it. A conveyance of land made nominally in payment of an usurious debt, but really as security for its payment, is tainted with usury and void. *Baggett* v. *Trulock,* 77 *Ga.* 369. It has been repeatedly determined by this court that a deed given in *payment* of a debt, although usury may have entered into the consideration, is not thereby rendered void. It is otherwise when given to secure the usurious debt. *Harris* v. *Hull,* 70 *Ga.* 832. Nor does it make any difference whether a deed be made under the provisions of sections 1969 et seq. of the Code (1882), or under the general law; if it is made as part of an usurious contract, it is void; and if the deed be void as title, it can not have effect as an equitable mortgage, because unless title passes an equitable mortgage is not created by a conveyance of land. *McLaren* v. *Clark,* 80 *Ga.* 424, citing 75 *Ga.* 159; 78 *Ga.* 161, 635; 77 *Ga.* 369. Such a deed, therefore, being void in the hands of the original grantee, the grantee can not make a valid conveyance even to an innocent purchaser without notice of the usury. *Pottle* v. *Lowe,* 99 *Ga.* 576, and *Angier* v. *Smith,* this term (post). Mr. Tyler in his work on usury, page 402, says: "The doctrine of the authorities is, that no contract or other security, which is valid in its inception,

can be invalidated by any subsequent usurious transaction; and on the other hand, there is no possible way by which a contract or other security which is usurious in its inception can be made good." This deed, then, being as title void at its execution, we think that, as against the grantor, neither the grantee nor any subsequent transferee could derive any title under or benefit from it, even though value was paid, and there was no notice of the fact of usury.

3. Under the power of sale contained in the deed which had been transferred and assigned to Mrs. Beach, she had advertised and was proceeding to sell the land conveyed by such deed, for the purpose of applying the proceeds to the payment of the promissory notes which Mrs. Beach held against Mrs. Lattner; thereupon Mrs. Lattner brought her petition praying that the sale be enjoined, setting up that the deed was void for the reason, among others, that the loan which it was made to secure was usurious, and therefore the deed conveyed no title, and praying its cancellation. To this petition Mrs. Beach made answer, claiming that she was the real lender of the money from the beginning, and that the loan and trust company was a mere intermediary. She denied that the loan was infected with usury, and, by way of cross-petition, set up that Mrs. Lattner was utterly insolvent and was in possession of and enjoying the land conveyed by the deed, which was insufficient in value to repay the loan, and prayed for a general judgment for the amount due on the notes, and for a special lien upon the land, of the force and dignity and of the nature provided in sections 1969–71 of the Code (1882). On the issues and questions made by these pleadings, the cause was tried and submitted to the jury. It appears that after the jury had retired to consider the case and make up their verdict, an amendment was filed by counsel of Mrs. Beach, making the additional allegation or defense, that even if the notes were tainted with usury, the court should not grant the relief asked by plaintiff until she tendered the amount which, in her pleadings on the trial, she admitted owing to the defendant on the notes; and defendant prayed that all relief sought by plaintiff be refused except on condition that de-

fendant's equities are protected either by payment to her of $1,320.00, with interest from April 1, 1889, and attorney's fees, as provided in the contract sued on, or by the sale of the property under decree of the court, and the payment of the proceeds to the defendant.

It is urged by counsel for plaintiff in error, as a reason why a new trial should be granted, that, notwithstanding this amendment, the jury returned a verdict finding, among other things, that the security deed was void for usury, and thereupon the court decreed its cancellation.   There is no doubt that, under the provisions of our Civil Code, §§ 5097 and 5101, as heretofore construed by this court, the right to amend pleadings may, subject to such terms as the judge properly imposes, be exercised at any stage of the case, and even after the time when the jury has retired to make up their verdict.   This proceeding having been instituted prior to the passage of the amending practice act of 1895, a portion of which is codified in section 5057 of the Civil Code, and which tends to restrict the right of amendment, it will be understood that what is said above has reference to the law as it stood prior to the passage of that act.   It appears that although the amendment was filed, it was never submitted to or acted upon by the jury, their attention was never directed thereto, and indeed the record shows that in rendering their verdict they did so in absolute ignorance of the fact that such a defense had been made. It is the duty of courts and juries to determine cases upon the issues and questions raised by the pleadings submitted; and in testing the legality or validity of the verdict and judgment, this court can only look to the pleadings and evidence submitted and upon which they rest.   No request was made to the court to recall the jury and charge them the law concerning the defense introduced by the amendment; no exception to his omission to do so is taken; but the contention is that, in view of this amendment, the relief granted could not equitably be allowed.   We do not understand how this court can consistently declare a verdict contrary to the law because of the existence of a matter of defense to some of the relief prayed, which, however, the party claiming the benefit thereof omitted altogether

to present at the proper time. In reversing judgments, appellate courts not uncommonly direct the lower court to allow amendments, especially if the error will be obviated thereby; but it is not the practice to reverse a judgment when no errors are found therein, in order to give a party an opportunity to make defenses which he did not ask for in the course of the original proceedings on which the trial was had and the verdict rendered. 1 Encyclopædia of Pleading and Practice, p. 617, and authorities cited. So likewise, a verdict and judgment otherwise free from error will not be reversed because of a defense which existed, which was not in fact presented and urged before the jury trying the cause.

4. It is a well-recognized principle, frequently found in the rulings of this court, that though a deed be void for usury, equity will not decree its cancellation without payment or tender of the principal and lawful interest; and this upon the principle that whoever would have equity must do equity. *Campbell & Jones* v. *Murray*, 62 *Ga.* 86; *Dotterer* v. *Freeman*, 88 *Ga.* 480. The defendant in error having admitted owing a given amount of principal and lawful interest thereon, she was not entitled to an equitable decree for a cancellation of the deed, had a proper defense, invoking the equitable principle above referred to, been made in due time and thus become a part of the pleadings upon which the verdict and judgment were founded.· As has been shown, however, the cause was tried and determined exclusively upon another issue, viz.: whether the deed was or was not infected with usury. There was sufficient evidence to support the finding of the jury that the deed was made as a part of an usurious contract; and there being, in the cause as it was submitted to the jury for their determination, no defense invoking an application of the equitable rule above referred to, we think the verdict and judgment allowing the plaintiff the equitable relief prayed for may lawfully stand. Although the doctrine invoked by the plaintiff in error rests upon the highest principles of equity and good conscience, and should be applied wherever it is proper to do so, we know of no rule of law requiring the court and jury to give expression thereto in the absence of a defense invoking its application.

5. From what has been said in the preceding divisions of this opinion, we think it follows that a result authorized by the pleadings and evidence, as they stood when the verdict was rendered, was reached; and hence we find no good reason for reversing the judgment of the court below.

In concluding this opinion of the court, it is due that I should say for myself, that when the case was taken up and the judgment rendered as indicated in the headnotes, I fully assented to all the propositions therein announced; but on a subsequent satisfactory investigation of such authorities as I think control, I am disposed to question the correctness of that part of the ruling which allows a decree that gives relief against the effect of an usurious contract, to one who seeks it without tendering or offering to pay the amount admitted to be legally due, to stand. I am in perfect accord with my brethren on all the other points ruled.

*Judgment affirmed.   All the Justices concurring.*