A98A0225. AIKENS et al. v. WAGNER et al.
(498 SE2d 766)

Judge Harold R. Banke.

Waymon Aikens and Walter Aikens (the "Aikenses") sued Victor Wagner and Glen Anthony Roseberry for damages and to void a foreclosure sale.[1] After both sides moved for summary judgment, the trial court granted Wagner's motion. The Aikenses appeal that disposition and the denial of their motion.

Suzie Aikens purchased certain real estate in 1960. In late 1969, she contracted with DeKalb County Home Improvement Company ("DCHIC") for certain home improvements. Suzie Aikens, who could neither read nor write, agreed to finance the work by pledging her real property as collateral on a promissory note and deed to secure debt in DCHIC's favor. She marked the contract and the deed with an "X." Under the terms of the November 1, 1969 contract between her and DCHIC, she became obligated to make 84 monthly payments of $51. The amount financed consisted of $2,350 in principal and $1,934 in interest at a 19.5 percent interest rate.[2]

Ms. Aikens tendered 28 payments including one double payment for a total of $1,478. At the time of her last payment on May 5, 1973, the balance outstanding was $2,539.57 and the final installment was due on December 5, 1976. Before her death in 1984, Ms. Aikens transferred her interest in the property to her sons, Waymon and Walter Aikens.

In June 1995, Waymon Aikens learned for the first time of the alleged existence of his mother's debt from 1969. On July 7, 1995, Wagner, who had acquired the note and security deed, sent a letter to him claiming that the note was in default, that he was entitled to $19,600.54 and that he intended to auction the property. By a certified letter dated September 1, 1995, Wagner declared the note and security deed in default and claimed that all principal and interest were due and immediately payable. Wagner demanded to be paid in full within ten days and advised that attorney fees would be assessed beyond that deadline and that the property would be auctioned on

---

[1] The Supreme Court transferred this case to this Court.
[2] The actual interest rate was closer to 19.2 percent.

October 3. On September 26, 1995, the Aikenses sought a temporary restraining order. Notwithstanding the continuing settlement negotiations, the property was sold for $10,100 on October 3, at the courthouse to Roseberry and James Shipp.[3] Two months after the foreclosure, Wagner reduced the claimed amount by nearly $12,000 to only $7,976.

In contending that the foreclosure sale was unlawful, the Aikenses urged that the advertisement of the sale was legally defective, that they did not receive adequate notice, and that the purchase price was far below market value. They claimed that Wagner had no right to foreclose based on the underlying power of sale. They also asserted that prior to the sale the ownership of the property had reverted to them under OCGA § 44-14-80 (a). The trial court disagreed and found the sale to be lawful. On reconsideration, the trial court rejected the Aikenses' argument that because the interest rate of 19.5 percent in the contract was illegal and violated the existing usury statute, the contract was void as was the subsequent foreclosure. *Held*:

1. The Aikenses contend that the trial court erred by failing to address their contention that the promissory note and deed to secure debt were usurious and therefore void. Where a note clearly and unequivocally calls for the payment of a rate of an unlawful interest rate, such an interest rate is usurious. *Chewning v. Huebner*, 142 Ga. App. 112, 114 (235 SE2d 573) (1977) (borrower entitled to directed verdict on suit to recover usurious interest). By law, all the interest charged must be forfeited. OCGA § 7-4-10 (a). See *Poteat v. Butler*, 231 Ga. 187, 188 (200 SE2d 741) (1973). See *Reconstr. Fin. Corp. v. Puckett*, 181 Ga. 288, 296 (181 SE 861) (1935) (no statute of limitation where debtor claiming credit for sums paid subject to forfeiture).

Notwithstanding Wagner and Roseberry's claims to the contrary, we have found no applicable law, and neither Wagner nor Roseberry offered any, which permitted such an excessively high interest rate in 1969. The transaction at issue implicated the now repealed Secondary Security Deeds Act, since the security deed at issue was not a first mortgage but was a secondary security deed.[4] See Code Ann. § 57-203. The then applicable law prohibited interest rates on loans secured by a security deed, like the one here, to exceed ten percent. Ga. L. 1968, pp. 1086-1087. It is undisputed that both the contract and payment history specify the interest rate as 19.5 percent. Rose-

---

[3] The day after the foreclosure sale, Wagner's attorney wrote a letter to the Aikenses' counsel stating, "I apologize for broad siding you in this manner, but I had tried [unsuccessfully to reach you prior to the sale]."

[4] The security deed denotes Newton County Federal Savings & Loan Association as the first mortgage holder.

berry's arguments that retail installment contract law authorized this rate and that the interest rate charged reflected a clerical mistake are unpersuasive. The Retail Installment Act expressly provided that it had no effect on secondary security deeds. Code Ann. § 96-911. Nor did the statutory exception for loans exceeding $3,000 apply because the principal here is only $2,350. Compare *Ward v. Hudco Loan Co.*, 254 Ga. 294 (328 SE2d 729) (1985) (loan at issue qualified for statutory exception to interest cap because the principal amount exceeded $3,000). Since the interest rate was unlawful, Wagner was not entitled to any interest, only the unpaid principal. *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 273 (4) (392 SE2d 242) (1990); OCGA § 7-4-10 (a). To hold otherwise would undermine the public policy of inhibiting usury. *McGehee v. Petree*, 165 Ga. 492 (1) (141 SE 206) (1928).

However, the Aikenses' contention that the usurious interest rate voided the entire transaction is not supported by any current law. Compare *Beach v. Lattner*, 101 Ga. 357, 365 (2) (28 SE 110) (1897); *Broach v. Smith*, 75 Ga. 159, 163 (1886). Although the Secondary Security Deed Act imposed harsh penalties against a lender who engaged in usurious transactions including the forfeit and refund of all principal, interest, and other charges, the legislature repealed that law in 1983. See Ga. L. 1966, pp. 574, 577. *Poteat*, 231 Ga. at 188. See *Fountain v. Dixie Fin. Corp.*, 252 Ga. 543, 544 (314 SE2d 906) (1984) (retroactive application of repeal). Thus, the transaction was not void and the interest but not the principal must be forfeited. OCGA § 7-4-10 (a).

2. The Aikenses contend that the trial court erred in finding as a matter of law that Wagner properly exercised the power of sale. We agree. Because part of the principal remained unpaid, Wagner was entitled to exercise the power of sale. However, when Wagner foreclosed under this power of sale, he incurred a duty imposed by statute to exercise that power fairly and in good faith. OCGA § 23-2-114. *Clark v. West*, 196 Ga. App. 456, 457 (b) (395 SE2d 884) (1990) (breach of the statutory duty is a tort although arising from a contractual obligation). See *Little v. Fleet Finance*, 224 Ga. App. 498, 501 (1) (481 SE2d 552) (1997). Where it is shown that the sale "price realized is grossly inadequate and the sale is accompanied by fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside. . . . [Cits.]" *Giordano v. Stubbs*, 228 Ga. 75, 79 (3) (184 SE2d 165) (1971).

Here, the legal advertisement erroneously indicated that interest on $2,350 had been accruing since 1969. Moreover, although Wagner had no legal obligation to provide the exact payoff balance to the Aikenses, when he made a claim, he incurred a duty to make an

accurate one. *Jordan v. Flynt*, 240 Ga. 359, 366 (3) (240 SE2d 858) (1977) (by undertaking a gratuitous duty, one incurs concomitant obligation). See *Brown v. Freedman*, 222 Ga. App. 213, 216 (1) (474 SE2d 73) (1996) (where debtor's effort to ascertain amount due is thwarted, some evidence created as to unfair exercise of power of sale). Waymon Aikens' testimony, although controverted, was that no bidders were present at the foreclosure sale. Waymon Aikens testified that he and his brother would have been willing to pay $7,976, "without verifying if the underlying debt was legitimate." Whether Wagner's assertion of a highly inflated, inaccurate unpaid balance constituted such a mistake or circumstance which chilled the bidding and resulted in a grossly inadequate price such that the sale may be set aside is a disputed material issue. *Giordano*, 228 Ga. at 79 (3). See *Smith v. Citizens &c. Fin. Corp.*, 245 Ga. 850, 852-853 (3) (b) (268 SE2d 157) (1980) ("chilling the bidding" is jury issue).

Under these unique circumstances, a jury must determine whether the Aikenses are entitled to the relief they seek. See *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 286 (1) (443 SE2d 837) (1994) (debtor may seek either to set aside the foreclosure or to recover damages for the value of the property, but not both). See *Tower Financial Svcs. v. Smith*, 204 Ga. App. 910, 916 (2) (423 SE2d 257) (1992) (damages available where power of sale not fairly executed). Accordingly, we reverse the judgment below and remand for a determination by the trial court of the remaining principal after crediting Ms. Aikens' payments.[5] Given Wagner's incorrect claim for an amount more than 20 times the actual balance due, it would be fundamentally unfair to find that the Aikenses forfeited their opportunity to tender the correct sum. Compare *Watkins*, 236 Ga. 763 (3) (debtor obligated to make tender where no uncertainty as to amount of his indebtedness). Thus, the Aikenses must be afforded an opportunity to tender the correct amount to Wagner. See *Coffey Enterprises &c. Co. v. Holmes*, 233 Ga. 937, 940 (3) (213 SE2d 882) (1975). Because material issues of fact remain as to whether Wagner breached his statutory duty to exercise fairly and in good faith the power of sale and whether the conduct of the foreclosure sale was proper, summary judgment must be reversed. *Brown*, 222 Ga. App. at 215 (1). See *Dickens*, 264 Ga. at 285-286 (1). In light of the above divisions, we need not reach the Aikenses' remaining enumerations of error.

*Judgment reversed and case remanded with direction. Blackburn and Eldridge, JJ., concur.*

---

[5] It appears to be $872, although Roseberry states in his brief that it is $718.

182

*Mitchell, Graham & Stroud, Tanya M. Graham, Rhathelia Stroud*, for appellants.

*Moulton & Massey, John W. Moulton, Kristine M. Tarrer, Fleming, Drummond & Ray, James A. Fleming*, for appellees.