**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 23, 2012**

# In the Court of Appeals of Georgia

A12A1499. RACETTE et al. v. BANK OF AMERICA, N. A. et al.

BARNES, Presiding Judge.

This appeal arises out of a wrongful foreclosure action brought by Charles and Debra Racette against Bank of America, N. A. ("BOA") and the law firm which conducted the foreclosure proceedings on behalf of the bank, Johnson & Freedman, LLC and Johnson & Freedman II, LLC (collectively, "J&F"). BOA and J&F moved to dismiss the complaint filed by the Racettes, and the trial court granted their motions, resulting in this appeal. For the reasons discussed below, we reverse the trial court's dismissal of the Racettes' claims for damages arising out of the alleged wrongful foreclosure and for equitable relief in the form of cancellation of the foreclosure sale. We likewise reverse the dismissal of their claims for breach of contract, breach of the duty of good faith and fair dealing, attorney fees and costs, and

punitive damages. In contrast, we affirm the dismissal of their claim for intentional infliction of emotional distress.

> Under OCGA § 9-11-12 (b) (6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation and punctuation omitted). *Anderson v. Daniel*, 314 Ga. App. 394, 395 (724 SE2d 401) (2012). See also *Scott v. Scott*, 311 Ga. App. 726, 729 (1) (716 SE2d 809) (2011) ("[I]t is no longer necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.") (citations and punctuation omitted).

"A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." OCGA § 9-11-10 (c). Hence, on a motion to dismiss, the

trial court can consider exhibits attached to and incorporated into the complaint. *Gold Creek SL, LLC v. City of Dawsonville*, 290 Ga. App. 807, 809 (1) (660 SE2d 858) (2008). See OCGA § 9-11-10 (c). To the extent that there is any discrepancy between the allegations in the complaint and the exhibits attached to it, the exhibits control. *H&R Block v. Asher*, 231 Ga. 780, 781 (204 SE2d 99) (1974).

Guided by these principles, we turn to the complaint and the exhibits attached to it that were filed in this case. The complaint alleges that the Racettes own real property in Paulding County, Georgia (the "Property"). In 1996, they signed a promissory note and security deed for the Property in favor of appellee BOA's predecessor-in-interest in the principal amount of $75,000 (the "Note" and "Security Deed"). The Security Deed was recorded in Paulding County and included a reference to a senior lien existing on the Property: "This deed to secure debt is subject only to that certain Deed to Secure Debt in favor of NationsBanc Mortgage Corporation dated 6-2-93, filed 6-9-93 in Deed Book 327, Page 399, Paulding County records." However, the document recorded at Deed Book 327, Page 399, in the Paulding County deed records actually concerned a different property and different borrowers.

The Racettes ultimately defaulted under the terms of the Note and Security Deed, and BOA declared the entire principal immediately due and payable. In 2010, BOA retained appellee J&F to foreclose under the terms of the Security Deed.

Appellees twice scheduled the Property for sale under the Security Deed, once on the first Tuesday of June 2010, and, then, after the June sale was canceled, on the first Tuesday of February 2011 (the "2011 Foreclosure Sale"). For each scheduled sale, J&F caused advertisements of the sale to be published in the legal organ for Paulding County which stated that the Racettes were in default under the terms of the Note and Security Deed. The advertisements also stated that the Property was being sold subject to a senior lien "in favor of NationsBanc Mortgage Corporation dated 6-2-93, filed 6-9-93 in Deed Book 327, Page 399, Paulding County records." The reference to a senior lien was in error: the Security Deed was no longer subject to a senior lien at the time the advertisement was published, and, as previously noted, the lien recorded at Deed Book 327, Page 399, in the Paulding County deed records concerned a different property and different borrowers.

Charles Racette appeared at both scheduled foreclosure sales and advised the appellees' representative on the courthouse steps of the inaccuracies in the advertisements concerning the alleged senior lien. While the appellees did not

4

proceed with the first scheduled foreclosure sale because of the inaccuracies, the appellees later chose to proceed with a second one – the 2011 Foreclosure Sale – despite the continued appearance of the inaccuracies in the advertisements regarding the lien status of the Property.

At the 2011 Foreclosure Sale, the Property was sold to BOA, the only bidder, for $81,872. BOA subsequently authorized a real estate agent to enter onto the Property without the permission of the Racettes.

The Racettes filed a verified complaint naming the appellees as defendants and asserting claims against them for wrongful foreclosure and intentional infliction of emotional distress. The Racettes also asserted claims against appellee BOA for breach of contract and breach of the duty of good faith and fair dealing.[1] They requested that the trial court cancel and set aside the 2011 Foreclosure Sale, and they sought damages (including emotional anguish damages), attorney fees and costs, and punitive damages.[2] Attached as exhibits to the complaint were copies of the Security

---

[1] Initially, the Racettes brought additional claims against BOA and J&F for violations of the Georgia Fair Business Practices Act and for unfair and deceptive practices against the elderly, and claims of breach of contract and breach of the duty of good faith and fair dealing against J&F, but they later withdrew those claims.

[2] The Racettes also requested a temporary restraining order and interlocutory injunction enjoining BOA from dispossessing them from the Property during the

Deed, the published foreclosure advertisements, and the notice of sale under power for the 2011 Foreclosure Sale.

The appellees moved to dismiss the Racettes' complaint for failure to state a claim upon which relief could be granted. After conducting a hearing where it heard argument from the parties, the trial court entered a summary order granting the appellees' motions to dismiss the complaint. This appeal followed.

1. *Wrongful Foreclosure.* The Racettes contend that the trial court erred in dismissing their claim for wrongful foreclosure. We agree.

"In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (Punctuation and footnote omitted.) *Gregorakos v. Wells Fargo Nat. Assn.*, 285 Ga. App. 744, 747-748 (2) (647 SE2d 289) (2007). See *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (1) (601 SE2d 842) (2004). In moving to dismiss the complaint for failure to state a claim upon which relief could be granted,

pendency of the case. BOA stipulated to entry of a consent order that granted an interlocutory injunction enjoining it from taking any steps to evict or dispossess the Racettes from the Property during the pendency of the action, and that ordered the Racettes to pay monthly rent into the court registry so long as the injunction remained in effect.

6

the appellees asserted that the complaint disclosed with certainty that the Racettes could not establish breach of duty or causation to support their wrongful foreclosure claim. We disagree with the appellees and conclude that the trial court erred in dismissing the wrongful foreclosure claim on these grounds.

(a) *Breach of Duty.* Under OCGA § 23-2-114, "[p]owers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." Where a foreclosing party breaches his statutory duty to exercise the power of sale fairly and in good faith, the debtor may sue for damages for wrongful foreclosure. *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 285-286 (1) (443 SE2d 837) (1994).

The Racettes alleged in their complaint that the appellees breached their duty to exercise the power of sale fairly and in good faith by publishing foreclosure advertisements that were defective as a matter of law and that chilled the bidding at the 2011 Foreclosure Sale. If the published advertisement of a foreclosure sale under power fails to meet the minimum legal requirements imposed by OCGA § 9-13-140 (a),[3] the advertisement is defective as a matter of law, and the resulting sale is invalid.

---

[3]OCGA § 9-13-140 (a) provides in relevant part that the foreclosure advertisement

shall give a full and complete description of the property to be sold,

7

See OCGA § 44-14-162 (a); *Southeast Timberlands, Inc. v. Security Nat. Bank*, 220 Ga. App. 359, 360 (1) (469 SE2d 454) (1996). If the advertisement is not defective as a matter of law under OCGA § 9-13-140 (a), the errors in the advertisement will support a wrongful foreclosure claim if the debtor can come forward with evidence that the defects chilled the bidding at the foreclosure sale, causing a grossly inadequate sale price. See *Amirfazli v. VATACS Group, Inc.*, 311 Ga. App. 471, 473 (2) (716 SE2d 523) (2011)*; Aikens v. Wagner*, 231 Ga. App. 178, 180-181 (2) (498 SE2d 766) (1998); *Southeast Timberlands, Inc.*, 220 Ga. App. at 360 (2); *Williams v. South Central Farm Credit, ACA*, 215 Ga. App. 740, 741-742 (2) (452 SE2d 148) (1994). Hence, to show that the appellees breached their duty to exercise the power of sale fairly and in good faith, the Racettes had to establish that the published foreclosure advertisements either (i) were defective as a matter of law or (ii) chilled the bidding at the 2011 Foreclosure Sale.

---

making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property. In the case of real property, such advertisement shall include the legal description of such real property and may include the street address of such real property, if available, but provided that no foreclosure shall be invalidated by the failure to include a street address or by the insertion of an erroneous street address.

(i) *Defective as a Matter of Law*. Contrary to the Racettes' assertion on appeal, the published foreclosure advertisements for the 2011 Foreclosure Sale were not defective as a matter of law. "The minimum legal requirements of a foreclosure advertisement are prescribed in OCGA § 9-13-140 (a), and only a failure to properly include those items will render the advertisement defective as a matter of law." *Southeast Timberlands, Inc.*, 220 Ga. App. at 360 (1). But we have held that "a misstatement or overstatement of the debt does not render [the] advertisement legally defective." Id. Furthermore, Georgia precedent reflects that an advertisement that fails to mention an existing senior lien on the property, or that references a senior lien that in fact has been cancelled, does not render the advertisement defective as a matter of law. See *Smith v. Citizens & Southern Fin. Corp.*, 245 Ga. 850, 852-853 (3) (b) (268 SE2d 157) (1980); *Walker v. Northeast Production Credit Assn.*, 148 Ga. App. 121, 122 (2) (251 SE2d 92) (1978). Thus, the advertisements for the 2011 Foreclosure Sale that contained the error regarding a senior lien on the Property were not defective as a matter of law. See id.

(ii) *Chilling of the Bid*. Although the Racettes cannot show that the published foreclosure advertisements were defective as a matter of law, it is possible that they will be able to introduce evidence, within the framework of their complaint, to

support the conclusion that the defects in the advertisements chilled the bidding at the 2011 Foreclosure Sale, causing a grossly inadequate sales price. Georgia courts have made clear that while an advertisement that fails to mention an existing senior lien on the property, or that references a senior lien that in fact has been cancelled, may not be defective as a matter of law, it is for the fact finder to determine whether the advertisement ultimately chilled the bid. See *Smith*, 245 Ga. at 853 (3) (b); *Southeast Timberlands, Inc.*, 220 Ga. App. at 360 (2); *Walker*, 148 Ga. App. at 122 (2).[4] Given this case law, and in light of the liberal standard applicable to motions to dismiss, we cannot say that the allegations of the complaint disclose with certainty that the Racettes will be unable to show that the erroneous reference in the advertisements to a senior lien as existing on the Property chilled the bidding at the 2011 Foreclosure Sale, and thus that the appellees breached their duty to exercise the power of sale fairly and in good faith.

---

[4] Commentators have noted the importance of foreclosure advertisements containing correct information about whether other liens or encumbrances will remain on the property. See Frank S. Alexander, Ga. Real Estate Finance and Foreclosure Law § 8:4 (2011–2012 ed.) ("It is critical that the advertisement identifies specifically those interests which will continue to encumber the property following the sale. The rationale for this is that a potential bidder at the sale needs to take into consideration in making a bid the extent of the continuing encumbrances.") (footnotes omitted).

The appellees nevertheless argue that the Racettes' complaint and attached exhibits demonstrate that the published advertisements could not have chilled the bidding at the 2011 Foreclosure Sale as a matter of law. In this regard, they contend that errors concerning a lien or encumbrance contained in a foreclosure advertisement do not chill the bid if "the true status of the property with respect to any encumbrances" could be ascertained by interested bidders through a search of the county records. *West Lumber Co. v. Schnuck*, 204 Ga. 827, 835-836 (3) (51 SE2d 644) (1949). See *Cleveland v. Cleveland*, 235 Ga. 361, 362 (4) (219 SE2d 715) (1975); *Redwine v. Frizzell*, 184 Ga. 230, 235 (6) (190 SE2d 789) (1937). According to the appellees, potential bidders at the 2011 Foreclosure Sale could have ascertained the true lien status of the Property by searching the Paulding County records, and, as a result, the Racettes could not prove chilling of the bid.

The appellees' argument is more appropriate for the summary-judgment stage than the motion-to-dismiss stage of the proceedings. The published foreclosure advertisements attached to the Racettes' complaint would have led a potential bidder to conclude that the Property would remain subject to a senior lien after the sale. However, the advertisements gave the book and page number in the records of Paulding County for a lien involving a different property and different borrowers, and

11

thus did not point potential bidders to the correct county records for confirming whether there was in fact a senior lien that would remain on the Property. After reviewing the particular county records referenced in the advertisements, a bidder would be uncertain (1) whether there was no senior lien on the Property and the advertisements incorrectly referenced the existence of a senior lien, or (2) whether there was in fact a senior lien but the advertisements identified the wrong recording information as to that lien. And it is unclear from the complaint whether a potential bidder would have been able to resolve this uncertainty by conducting an independent search of county records, particularly given that the Security Deed itself contained the same inaccurate reference to the book and page number for the senior lien in the county records as the advertisements. Hence, it is not possible, at the motion to dismiss stage with no developed factual record, to determine whether a potential bidder could have ascertained "the true status of the property with respect to any encumbrances" through a search of the county records. See *Oates v. Sea Island Bank*, 172 Ga. App. 178, 179 (2) (a) (322 SE2d 291) (1984) (treating as factual issue the question whether foreclosure advertisement that referred to wrong plat book in describing property chilled the bid). Cf. *Amirfazli v. VATACS Group, Inc.*, 311 Ga. App. 471, 473 (2) (716 SE2d 523) (2011) (factual issue existed over whether error

in advertisement chilled the bid at foreclosure sale, where the public record from which potential bidders could have gleaned the error in the advertisement was not filed until four days before the sale).[5]

For the foregoing reasons, the Racettes may be able to introduce evidence, within the framework of their complaint, to support the conclusion that the published foreclosure advertisements containing inaccuracies about the existence of a senior lien on the Property chilled the bidding at the 2011 Foreclosure Sale. Consequently, the Racettes may be able to demonstrate that the appellees breached their duty to conduct the 2011 Foreclosure Sale in a fair manner, and thus may be able to establish the breach-of-duty element of their wrongful foreclosure claim.

(b) *Causation.* The appellees also contend that the Racettes' wrongful foreclosure claim fails as a matter of law because it is not possible for the Racettes to show that the inaccuracies regarding the senior lien in the foreclosure advertisements caused them any harm or damage. We disagree.

[5] BOA further asserts that the published foreclosure advertisements were proper as a matter of law because the advertisements simply recited the same incorrect information contained in the Security Deed regarding the senior lien. We are unpersuaded because, as alleged in the complaint, Mr. Racette placed the appellees on actual notice that no senior lien remained on the Property and that the references in the advertisements to the book and page number in the records of Paulding County were inaccurate.

A debtor's claim for damages arising from a wrongful foreclosure sale "may lie . . . when the price realized [at the sale] is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price." (Citation and punctuation omitted.) *Brown v. Freedman*, 222 Ga. App. 213, 215 (1) (474 SE2d 73) (1996). See *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330 (1) (270 SE2d 867) (1980); *Aikens*, 231 Ga. App. at 180-181 (2). We cannot say that allegations of the Racettes' complaint disclose with certainty that they would be unable to prove that the inaccuracies regarding the senior lien in the published foreclosure advertisements chilled the bid, causing them harm in the form of a grossly inadequate sale price being realized at the 2011 Foreclosure Sale.

For the combined reasons discussed in Division 1 (a) and (b), the Racettes may be able to establish breach of duty and causation upon further development of the factual record, and it would be inappropriate to dismiss their wrongful foreclosure claim at this early stage of the proceedings. The trial court thus erred in dismissing their claim for damages arising out of the alleged wrongful foreclosure.

14

2. *Cancellation of the 2011 Foreclosure Sale.* In the count of their complaint for wrongful foreclosure, the Racettes sought equitable relief in the form of cancellation of the 2011 Foreclosure Sale in addition to their request for damages. The Racettes clarified in their briefing in the trial court that their claim for equitable relief was only asserted against BOA.[6] And BOA has not raised any grounds for dismissing the Racettes' claim for equitable relief different from the grounds raised and rejected by this Court in Division 1. Consequently, the trial court erred in dismissing the Racettes' claim for equitable relief in the form of cancellation of the 2011 Foreclosure Sale.

3. *Intentional Infliction of Emotional Distress.* The Racettes contend that the trial court erred in dismissing their claim for intentional infliction of emotional distress. We disagree.

> Georgia has long recognized a cause of action for intentional infliction of emotional distress. However, the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise

---

[6] J&F initially sought dismissal of the Racettes' claim for equitable relief, but counsel for J&F made clear at the hearing on the motion to dismiss that J&F was withdrawing its challenge to that claim, given that the Racettes had clarified that the claim was asserted only against BOA.

15

to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

(Citations and punctuation omitted.) *Frank v. Fleet Finance Inc. of Ga.*, 238 Ga. App. 316, 317-318 (518 SE2d 717) (1999). See *Steed v. Federal Nat. Mtg. Corp.*, 301 Ga. App. 801, 810 (2) (b) (689 SE2d 843) (2009).

"[I]t is true that an intentional wrongful foreclosure can be the basis for an action for intentional infliction of emotional distress" under certain circumstances. (Citation and punctuation omitted.) *Blue View Corp. v. Bell*, 298 Ga. App. 277, 279 (1) (679 SE2d 739) (2009). See *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 449 (4) (662 SE2d 141) (2008); *Clark v. West*, 196 Ga. App. 456, 457-458 (b) (395 SE2d 884) (1990). But the Racettes' allegation that the appellees conducted the 2011 Foreclosure Sale despite knowing of inaccuracies in the published foreclosure advertisements "cannot be described as extreme, outrageous, atrocious, intolerable or beyond the bounds of decency." *Frank*, 238 Ga. App. at 318. It follows

16

that the trial court committed no error in dismissing their claim for intentional infliction of emotion distress. Compare *DeGolyer*, 291 Ga. App. at 449-450 (4) (evidence supported claim for intentional infliction of emotional distress where party proceeded with foreclosure and sale after being told it foreclosed on wrong property); *Blanton v. Duru*, 247 Ga. App. 175, 178-179 (5) (543 SE2d 448) (2000) (trial court's award of damages for intentional infliction of emotional distress affirmed, where foreclosure proceedings were instituted pursuant to security deed that the court had ordered to be canceled); *Clark*, 196 Ga. App. at 457-458 (a), (b) (claim for intentional infliction of emotional distress could proceed, where debtor alleged that foreclosing parties "knew the note was not in default and [that] they had no right to foreclose").

4. *Breach of Contract against BOA.* The Racettes further contend that the trial court erred in dismissing their claim for breach of contract asserted against BOA. We agree.

In seeking the dismissal of the breach-of-contract claim, BOA argued that the claim should be dismissed because the Racettes' complaint did not set forth the basis for the claim in sufficient factual detail to give BOA proper notice of the claim. But "[t]he Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice

17

consistent with the statutory requirement of the Act." *Rucker v. Columbia Nat. Ins. Co.*, 307 Ga. App. 444, 446 (1) (a) (705 SE2d 270) (2010). See OCGA § 9-11-8. "[P]leadings serve only the purpose of giving notice to the opposing party of the general nature of the contentions of the pleader," *DeKalb County v. Ga. Paperstock Co.*, 226 Ga. 369, 370 (1) (174 SE2d 884) (1970), and thus "general allegations are sufficient to support a plaintiff's claim for relief." *Davis v. Metzger*, 119 Ga. App. 750, 751 (2) (168 SE2d 866) (1969).

Construed in the light most favorable to the Racettes, the complaint alleged that BOA owed obligations to the Racettes under the Security Deed, and that BOA breached those contractual obligations by going forward with the 2011 Foreclosure Sale despite the error in the published foreclosure advertisements. The Racettes' complaint, coupled with the attachment of the Security Deed as an exhibit thereto, was sufficient for purposes of the Civil Practice Act to put BOA on notice of the breach-of-contract claim being asserted against it. See, e.g., *City of Acworth v. John J. Harte Assoc.*, 165 Ga. App. 438, 438-439 (1) (301 SE2d 499) (1983) (third-party complaint alleging that appellee inspected sewer and draining systems pursuant to contractual obligations it owed to the city, and that appellee breached its obligations by failing to determine improper construction or design of those systems, coupled

18

with submission of a copy of the contract, was sufficient to put appellee on notice of breach-of-contract claim).

BOA also argued that the breach-of-contract claim should be dismissed because there was no defect in the published foreclosure advertisements and no causal connection between the advertisements and any harm sustained by the Racettes. BOA's argument fails for the same reason discussed in Division 1. Thus, the trial court erred in dismissing the breach of contract claim.

5. *Breach of the Duty of Good Faith and Fair Dealing against BOA.* The Racettes also contend that the trial court erred in dismissing their claim for breach of the duty of good faith and fair dealing asserted against BOA. Again, we agree.

In moving to dismiss, BOA argued that there could be no claim for breach of the duty of good faith and fair dealing for the same reasons that their could be no claim for breach of contract. Hence, BOA's argument fails for the same reasons discussed in Division 4, and the trial court erred in dismissing the claim for breach of the duty of good faith and fair dealing.

6. *Attorney Fees, Costs, and Punitive Damages.* An award of attorney fees, costs, and punitive damages is derivative of a plaintiff's substantive claims. See *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737)

19

(2008). Because the trial court erred in dismissing several of the Racettes' substantive claims, the court likewise erred in dismissing their request for attorney fees, costs, and punitive damages as derivative of those claims.

*Judgment affirmed in part and reversed in part. Adams and McFadden, JJ., concur.*