A. C. ALEXANDER LUMBER COMPANY *et al. v.* BAGLEY; *et vice versa.*

Nos. 11669, 11722.   May 13, 1937.

*Dykes & Dykes,* for plaintiff in error.

*T. B. Bagley, T. H. Fort, John C. Bult,* and *B. S. Miller,* contra.

BELL, Justice (after stating the foregoing facts.)

Several issues were raised or referred to by the pleadings in this case. The court sustained demurrers to some of the allegations of the petition, and it is recited in the cross-bill of exceptions that demurrers to the answers were overruled. It is not easy to construe the several allegations assailed by the respective demurrers, for the purpose of determining the precise issues, exclu-

sive of others, to which they related. For this reason, reference has been made to the briefs as showing the contentions made in this court by the respective plaintiffs in error, touching construction of the pleadings and the assignments of error insisted upon. The main bill of exceptions brought by the lumber company and Walter Reed Martin, the defendants in the court below, complains only of the grant of an interlocutory injunction forbidding the cutting and removal of the timber situated on the 150 acres referred to as the "pond site." Several assignments of error are made on this judgment, but, as stated in the brief of counsel for the plaintiffs in error in this bill of exceptions, the principal question for determination is the construction of the stipulation that the second party, that is the lumber company, "will cut the timber on what is known as the pond site of about 150 acres, more or less, without delay, within six months from this date." We will say first that the description contained in this clause, when considered with other portions of the contract, can not be held void for uncertainty, being sufficient to furnish a "key" to identification. In such case, identification may be completed by extraneous evidence applying the description to the intended subject-matter. *Boyd* v. *Sanders,* 148 *Ga.* 839 (98 S. E. 490); *Valdosta Machinery Co.* v. *Finley,* 164 *Ga.* 706 (139 S. E. 337); *Smith* v. *Federal Land Bank,* 181 *Ga.* 1 (181 S. E. 149).

The next question is whether the time limit of six months as stated in the same clause should be construed as a condition determining the estate, or as a covenant remediable in damages. The courts of the country are not in harmony in the construction of contracts conveying timber for a limited time. In 38 Corpus Juris 163, § 41, it is stated: "According to the weight of authority, a deed or contract for the sale of standing timber which limits the time for the cutting and removal thereof operates as a sale only of so much of the timber as is removed within the time limited, and confers no authority to remove it after the expiration of the time specified, unless the time is extended by agreement, or unless the failure to remove is caused by the act of God, or by the act of the seller." In the same connection it is further stated: "Where the time within which the cutting and removal is limited in the conveyance or the contract of sale, time is generally regarded as of the essence of the contract. The view is taken that

the title so acquired is defeasible and determinable as to so much of the timber as is not cut within the time specified, the limitation as to time being considered not a covenant, but a condition, in the absence of apt language to constitute the agreement to remove a mere covenant instead of a condition." In 17 Ruling Case Law 1085, § 14, it is stated: "The weight of authority is apparently to the effect that while a contract for the sale of standing timber passes title to the timber, such title is subject to defeasance as to the timber not removed within the time limited, whether the limitation be the implied one of a reasonable time, in which event some courts have based their decision upon the theory of abandonment, or whether the limitation be expressly fixed in the instrument itself, and the timber remaining standing at the end of the limited period is the property of the vendor. In arriving at this conclusion, it has been stated that the contrary rule is too technical and leads to results in declared rights that are inequitable and in remedies that are inadequate, and the soundness of a construction that gives rise to so many and such remedies on breach of the contract may well be doubted. Some of the courts holding to the doctrine of indefeasible title declare, that, although the grantee does not lose his title by failure to remove the timber from the land within the period limited, the court can not give him authority to enter to remove after expiration of the period. In this view there would be an existing title barren of right to be enforced legally, to be enjoyed only by way of a trespass."

The previous decisions by this court, beginning as far back as *Morgan* v. *Perkins* (1894), 94 *Ga.* 353 (21 S. E. 574), have consistently followed the majority rule. A concise decision applying the rule is found in *Jones* v. *Graham,* 141 *Ga.* 60 (80 S. E. 7). An owner of timber situated on two designated lots sold it under a contract "allowing" to the purchaser four months from date "in which to get the timber off of" one lot and "two years in which to saw and remove the timber from" the other lot, "with all necessary rights of way to get the timber," the purchaser "to take the timber on terms and conditions set out above." This court held: "Properly construed, this was a conveyance . . of an estate in the specified timber, determinable, however, on failure to sever it from the realty within the dates specified." In *Morgan* v. *Perkins,* supra, a conveyance of timber was made in writing in

which it was stated that the timber was to be cut off the land by December 25, 1886. In the decision it was said: "The timber being realty, the purchaser acquires by the written conveyance an interest in the land subject to be divested if he fails to remove the timber within the time limited by the conveyance. This is a limitation upon the estate granted; and if the timber is not removed within the time prescribed in the limitation, the estate terminates." It will be noticed that neither of the contracts referred to in these cases contained a defeasance clause, and yet it was held that the estate was defeasible. Accordingly, in the instant case, the stipulation as to cutting the timber on the pond site within six months can not be construed as a mere covenant remediable in damages; but the right of the lumber company to cut the timber situated on this tract was subject to be divested if it failed to act within the time limited by the conveyance. It is true that the contract here under consideration is complicated to some extent by the facts that in one clause it was stipulated by the grantor that the grantee was to have the free use and enjoyment of the timber on *all* of the land until November 9, 1937, while in a later clause it was agreed by the *grantee* that it would cut the timber on what is known as the pond site "without delay, within six months." "Equity seeks always to construe conditions subsequent into covenants, and to relieve against forfeitures, where the rules of construction will allow." Code, § 37-216. "A deed will not be construed as a grant on condition subsequent, unless the language used by express terms creates an estate on condition, or unless the intent of the grantor to create a conditional estate is manifest from a reading of the entire instrument." *Thompson* v. *Hart,* 133 *Ga.* 540 (66 S. E. 270). "If from the language employed in a deed it is doubtful whether the clause creates a condition or a covenant, it will be construed a covenant." Koch *v.* Streuter, 232 Ill. 594 (83 N. E. 1072), quoted in *Self* v. *Billings,* 139 *Ga.* 400, 403 (77 S. E. 562).

But the first and fundamental rule is to ascertain the intention of the parties, and to this end the whole instrument, together with its circumstances, must be considered. Under the rule prevailing in this State, the interest of the lumber company was clearly a defeasible one as regards the first clause, and it is hardly conceivable that a different right was intended by the second clause.

In other words, did these parties intend that as to some of this timber the failure to cut it within the time specified would result in a reversion, while as to the remainder such failure would not affect the title, but would merely confer upon the seller a right of action for damages? In view of the settled rule of construction which has obtained in this State for more than forty years and its general recognition for a long period by those engaged in the sale and purchase of timber, it is quite improbable that either of these parties had any thought of damages in respect of either time limit; but the matter evidently in the mind of each was to consummate a contract applicable alike to all the timber, except the difference in the time within which the rights of the grantee might be exercised. Upon a consideration of the entire contract, it is not apparent that the parties intended that the time limit should be treated in one instance as a condition and in the other as a covenant, so as to split and render variable the rights and remedies under a single contract in reference to a specified quantity of timber. That the parties did not have such intention is manifestly the only reasonable construction. *Neal Lumber Co.* v. *O'Neal,* 175 *Ga.* 883, 890 (166 S. E. 647). So when the instant contract is properly construed as a whole, the evident meaning is that the lumber company was given the right to cut and remove the timber on any portion of the lands within a period of two years, except the timber growing on the "pond site," with reference to which the time limit was six months; but that it was incumbent upon the grantee to cut and remove the timber within the times specified, and that upon its failure to do so its interest would cease and determine. So at the time the suit was filed the lumber company had no further right or interest in the timber situated on the pond site. It necessarily follows that the action of the plaintiff did not amount to a rescission or involve an illegal forfeiture, as contended; and that the court did not err in granting the injunction. See also *Shippen Brothers Lumber Co.* v. *Gates,* 136 *Ga.* 37 (70 S. E. 672), and cit.

■ Coming now to the so-called cross-bill of exceptions as brought by the plaintiff, we will first call attention to the fact that this bill of exceptions contains much that is not appropriate or permissible in a cross-bill of exceptions. The plaintiff, having brought a bill of exceptions in the form and manner of a cross-

bill, has assumed the attitude of the successful party in respect of the judgment complained of in the main bill. The Code provides that "when the successful party to any cause . . which is carried to the Supreme Court . . shall file a cross-bill of exceptions, complaining of errors in rulings made upon the trial adverse to him, it shall be the duty of the appellate court to hear argument upon such cross-bill of exceptions, and to decide the questions therein made, if a reversal of the judgment of the court below shall be ordered, or if the effect of the affirmance shall be to leave the case to be again tried in the court below." Code, § 6-901. "If a defendant in error shall except in any case by bill of exceptions, he shall prepare his bill of exceptions and proceed in the same manner as above provided, but shall not take up any portion of the evidence or record that is taken up by the main bill of exceptions." Code, § 6-809. In *Hammond* v. *Conyers*, 118 *Ga.* 539, 540 (45 S. E. 417), it was said: "Under our system it is contemplated that a party who is dissatisfied with the judgment below will file a main bill of exceptions independent of the exceptions which may be filed by the other party. Each party may do this, and the result be two different and independent bills of exceptions in the same case. Where one party is satisfied to abide by the result of the trial in the court below, he may still, if the other party brings the case up for review, wish to correct certain rulings made against him, so as to prevent their repetition in the event a new trial is ordered. In such case his remedy is by cross-bill of exceptions. If the judgment below does not leave the case to be again tried, then by filing a cross-bill of exceptions a party necessarily, under our system, places himself in the attitude of one who is willing to abide the judgment below if it be left undisturbed." In *Planters & Peoples Mutual Fire Asso.* v. *DeLoach*, 113 *Ga.* 802, 807 (39 S. E. 466), it was said: "The cross-bill of exceptions is a remedy, provided for the successful party in the trial court to have reviewed rulings made against him during the trial, in the event his adversary is successful in obtaining a judgment in the Supreme Court which in its effect leaves the case to be tried again in the trial court. See Civil Code, § 5527. The cross-bill of exceptions must contain, or specify, so much of the evidence as is material to a clear understanding of the errors *therein* complained of. Other evidence than what is necessary

for this purpose has no proper place in the cross-bill of exceptions, and if contained therein must be entirely disregarded." In the present case the only judgment complained of in the main bill of exceptions is the grant of an interlocutory injunction to restrain the cutting and removing of timber from a tract of land known as the "pond site." Under the law as stated, the cross-bill of exceptions as brought by this plaintiff could properly assign error only upon such rulings of the court as were adverse to her and related to the particular judgment which the court finally rendered in her favor, and which is complained of by the opposite party in the main bill of exceptions; this in order that the rulings so made by the court adversely to her may be corrected for her benefit in the next trial, if a reversal is ordered on the main bill of exceptions, or if an affirmance will leave the case to be tried again in the court below. If there is no reversal, or if affirmance does not leave the case to be tried again in the court below, the settled practice is to dismiss the cross-bill of exceptions.

In the present case the judgment on the main bill of exceptions is affirmed; but the judgment complained of is merely an interlocutory injunction, which necessarily implies that the case will be tried before a jury in ordinary course. Does this affirmance "leave the case to be again tried in the court below," within the meaning of the Code? Or does the quoted phrase merely contemplate, as in this case if the judgment were reversed, a new trial of the same type as that under review, to wit, a new interlocutory hearing? According to usual procedure, either the grant or the refusal of an interlocutory injunction will leave the *case* for trial before a jury. Does such a trial fall within the phrase of the statute as to leaving the *case* to be tried *again* in the court below? See, in this connection, *Southwestern Railroad Co.* v. *Smithville,* 134 *Ga.* 432 (67 S. E. 936); *Brookman* v. *Rennolds,* 148 *Ga.* 721 (98 S. E. 543); *Tift* v. *McCaskill,* 171 *Ga.* 289 (4) (155 S. E. 192). The affirmance on the main bill in the present case does not leave the case to be tried *again* in the court below *on interlocutory hearing,* but does leave it for trial before a jury. Assuming, without deciding, that this makes it proper to consider the cross-bill of exceptions, we will proceed to rule upon such of the assignments of error contained therein as are insisted on, so far as they may be treated as proper matter for a cross-bill of ex-

ceptions. We may do this in the present case for the reason that in our opinion none of the assignments of error will require a reversal, and therefore the procedure thus adopted in reference to the cross-bill can not be harmful to either party.

By the first assignment of error, it is contended that under the evidence shown at the hearing the court should have granted a "permanent injunction," as distinguished from an interlocutory injunction. This assignment of error is not referred to in the briefs, and will be considered as abandoned. Being so considered, we will not decide it. Nor will it be classified as being proper or improper matter in a cross-bill of exceptions. The fourth assignment of error is that the court erred in rejecting a letter from the lumber company to B. S. Miller, and in refusing to permit the addressee to testify orally in relation thereto. It is alleged that the court in rejecting this evidence withheld from consideration the definite fact of the establishment and location of the pond site, and that the evidence "should have been allowed and considered in connection with the affidavit of said Miller relative thereto and which [is] of file in the record in said case." The letter has been referred to in the statement preceding this opinion, and is not more definite as to the "fact of the establishment and location of the pond site" than is the contract itself. The assignment refers to an affidavit of Miller which is of file in the record, but no such affidavit is discoverable in the record as transmitted to this court. It seems from recitals in the bill of exceptions that the testimony of Miller would have explained pencil notations on the letter, but the letter itself, as quoted in the bill of exceptions, does not show any pencil notations, and it does not appear what testimony Mr. Miller would have given in reference thereto. Obviously the fourth assignment of error does not show any cause for a reversal. In the sixth assignment of error, it is contended that "the affidavits of W. B. Mann, A. W. Smith, and C. H. Bliss which [were] filed and considered after October 12, 1936, were illegal, irrelevant, and had no bearing on the matters at issue." This assignment relates to the same evidence which is mentioned in a previous recital of the bill of exceptions, to wit, that after the hearing "on October 12, 1936, and before the date of the order passed on November 5, 1936, defendants submitted to the court affidavits of W. B. Mann, A. W. Smith, and C. H. Bliss, to which

plaintiff, upon being advised that such affidavits had been submitted to the court, entered objections to the introduction or consideration thereof; such affidavits being shown on pages 42 to 45 of bill of exceptions filed by defendants in said case November 17, 1936." Granting for the present purpose that the reference thus made is sufficient to bring the affidavits before this court, the bill of exceptions does not show what objections were made to their introduction or consideration, and the assignment of error merely alleges that the affidavits were illegal and irrelevant, and had no bearing on the matters at issue. It does not appear wherein they were "illegal," and the admission of evidence which is merely irrelevant is not reversible error unless a reasonable likelihood of prejudicial effect appears, which is not shown in the present case. *Watkins* v. *Woodbery,* 24 *Ga. App.* 80 (2) (100 S. E. 34).

The other assignments of error, to wit, 2, 3 and 5, relate to orders (1) overruling demurrers filed by the plaintiff to the defendants' answers, (2) sustaining demurrers of the defendants to portions of the plaintiff's petition, and (3) the disallowance of an amendment to the petition offered by the plaintiff, wherein reformation was sought. As we understand these assignments of error from the record and the briefs of counsel, they do not relate to matters which could properly be assigned as error in the present cross-bill of exceptions, since they did not concern issues or questions relating to the judgment granting an injunction as to timber on the pond site, which judgment turned on a construction of the stipulation which imposed a time limit of six months and the sufficiency of the evidence to identify the pond site. Accordingly, the questions raised by these three assignments of error can not be decided under this bill of exceptions, considered as a cross-bill. Nor can we treat this bill of exceptions as an independent main bill of exceptions. It is perfectly clear that the plaintiff in error therein intended it as a cross-bill of exceptions. The plaintiff followed the provisions of the Code, § 6-809, and did not bring up any portion of the evidence or the record that was brought up by the opposite party. "The record in another case could not thus be made available to this plaintiff in error, if the bill of exceptions thus sued out by [her] were treated as a main bill of exceptions, for it would be an entirely different case from that brought up by" the lumber company and its codefendant. *Farns-*

*worth* v. *McPherson,* 147 *Ga.* 384 (94 S. E. 220); *Southwestern Railroad Co.* v. *Smithville,* 134 *Ga.* 432 (2-a) (67 S. E. 936); *Georgia Power Co.* v. *Davis,* 43 *Ga. App.* 791, 796 (160 S. E. 690), et seq. But even to view the matter differently to the extent of treating this bill of exceptions as being in substance an independent main bill, we still could not decide the questions raised by assignments 2, 3, and 5, because there is no assignment of error upon a final judgment. The sustaining of demurrers to some of the plaintiff's allegations but leaving the petition with substantial allegations still pending, the overruling of demurrers to the defendants' answers, and the refusal of the amendment to the petition were, all of them, rulings which in the state of the record could only be excepted to pendente lite. Accordingly, if the bill of exceptions could be treated as an independent main bill, it is premature, and these rulings can not be reviewed thereunder, the defect being one relating to jurisdiction. *Gilbert* v. *Tippens,* 183 *Ga.* 497 (188 S. E. 699); *Canuel* v. *Seaboard Air-Line Railway,* 128 *Ga.* 41 (57 S. E. 92); *Burkhalter* v. *Roach,* 145 *Ga.* 834 (90 S. E. 52); *Ivey* v. *Forsyth,* 164 *Ga.* 705 (139 S. E. 354); *English* v. *Rosenkrantz,* 150 *Ga.* 745 (105 S. E. 292). The bill of exceptions, however, will not be dismissed, because we have retained it on the assumption that as a cross-bill it contains some assignments of error which should be decided, and which we have decided as indicated.

*Judgment affirmed on both bills of exceptions: All the Justices concur.*