A04A1717. LAMB v. T-SHIRT CITY, INC. et al.
(612 SE2d 108)

ADAMS, Judge.

T. Gordon Lamb, as assignee of Kinyo Kang, filed a complaint against T-Shirt City, Inc. and Stokes, Lazarus & Carmichael, LLP (Stokes Lazarus), asserting that T-Shirt City, through its counsel, Stokes Lazarus, had wrongfully filed a claim for funds in a Gwinnett County garnishment action. Lamb asserted that T-Shirt City had previously assigned the judgment underlying its claim to Kinyo Kang, who, in turn had assigned her rights to Lamb. Lamb appeals from the trial court's grant of summary judgment in favor of T-Shirt City and Stokes Lazarus. We affirm.

In 1995 T-Shirt City, Inc. sued Pier 83 Ltd. International, Inc. and Ki Taek Kang to collect upon a debt. That suit resulted in a judgment in T-Shirt City's favor against Pier 83 and Ki Taek Kang in the amount of $179,426. In the answer and counterclaim filed by T-Shirt City and Stokes Lazarus in this case, they allege that in January 2000, Stokes Lazarus, as counsel for T-Shirt City, deposed Ki

Taek Kang in connection with their efforts to collect upon the judgment. Ki Taek Kang testified under oath that he did not have any banking accounts in the United States or Japan. But T-Shirt City contends that unknown to it, Ki Taek Kang had used an alias, Bang Sung Kang, to open bank accounts with First Union Bank, and at the time of his deposition, held over $220,000 in those accounts. In reliance upon Ki Taek Kang's deposition testimony, T-Shirt City entered into an agreement with Kinyo Kang (purportedly the sister of Ki Taek Kang) whereby Kinyo Kang paid T-Shirt City $13,000 in exchange for T-Shirt City's assignment to her of its judgment against Ki Taek Kang. T-Shirt City asserts that but for Ki Taek Kang's concealment of his First Union accounts, it would not have assigned its judgment to Kinyo Kang in exchange for $13,000.

In an unrelated case, PRL USA Holdings, Inc.,[1] obtained a separate judgment against Ki Taek Kang, and in order to collect upon that judgment, began proceedings to garnish the First Union accounts held in the name of Bang Sung Kang. When T-Shirt City learned of the First Union accounts, it made a claim in the garnishment action to the account proceeds. In addition, Kinyo Kang filed a motion to intervene in the garnishment action. The trial court denied the motion on the ground that Kinyo Kang had not filed a claim under oath to the funds, as required by OCGA § 18-4-95. There is nothing in the record to indicate that Kinyo Kang appealed the trial court's order. After the denial of Kinyo Kang's motion to intervene, PRL and T-Shirt City submitted to a consent order in which they agreed to a 50-50 split of the proceeds in the First Union accounts. The garnishment court entered the consent order on January 2, 2001.

Lamb initiated the present action on July 23, 2002, claiming that Kinyo Kang had assigned the T-Shirt City judgment to him, along with any causes of action arising out of that judgment. Claiming that T-Shirt City and Stokes Lazarus had wrongfully filed a claim in the garnishment action, Lamb sought to recover $112,420.12, or 50 percent of the proceeds in the First Union account. T-Shirt City and Stokes Lazarus moved for summary judgment on the grounds, inter alia, of res judicata and estoppel by judgment. The trial court granted the motion on November 19, 2002.[2]

---

[1] PRL is not a party to this litigation.

[2] Lamb claimed that he was not served with a copy of that order and petitioned the trial court for an extension of time in which to file his notice of appeal. The trial court entered an order on January 31, 2003, giving Lamb ten days in which to file his notice of appeal. Lamb filed his notice on February 5, 2003, but the appeal was later dismissed by this Court, which held that the trial court was without authority to grant an extension as Lamb made his request for an extension more than 30 days after the summary judgment motion was entered. The trial court subsequently vacated its November 19, 2002 order and reissued the order on February 24, 2004, to give Lamb the opportunity to file a timely notice of appeal.

1. Lamb first asserts that the trial court erred in granting summary judgment. Among other arguments, he asserts that his claims were not barred by res judicata. "[R]es judicata bars subsequent actions 'as to all matters put in issue or *which under the rules of law might have been put in issue*' in the original action." (Emphasis in original.) *CenTrust Mtg. Corp. v. Smith & Jenkins, P.C.*, 220 Ga. App. 394, 396-397 (2) (469 SE2d 466) (1996), citing OCGA § 9-12-40. Accordingly,

> [r]es judicata will bar a plaintiff's action if the plaintiff has brought another action based on the same subject matter, the plaintiff had a full and fair opportunity to litigate the other action, the other action resulted in an adjudication on the merits, *and* the other action was against the same defendant or its privy. Three elements are necessary to establish res judicata: (a) identity of the parties; (b) identity of the cause of action; and (c) prior adjudication on the merits of the action by a court of competent jurisdiction.

(Punctuation and footnotes omitted; emphasis in original.) *Kaylor v. Rome City School Dist.*, 267 Ga. App. 647, 648 (1) (600 SE2d 723) (2004).

Here, the identity of the parties is not at issue, but Lamb contends that no court has ever ruled on the issue in this case: whether the assignment from T-Shirt City to Kinyo Kang was valid. He asserts that the garnishment court merely entered a consent order that did not address the merits of T-Shirt City's claim to the garnishment funds.

The gist of Lamb's complaint, however, is that Kinyo Kang's claim to the garnished funds was superior to that of T-Shirt City (and/or PRL). This is the very issue that Kinyo Kang raised in her motion to intervene in the garnishment proceeding. In connection with that motion, she briefed the issue of T-Shirt City's claim that the assignment was fraudulently induced and submitted an affidavit from Lamb in support of her argument. The garnishment court had the authority to consider Kinyo Kang's argument as it is charged by statute with determining the priority of the various claims to the garnished funds. OCGA § 18-4-94 (b). Pursuant to this authority, the court, after stating that it had considered the evidence presented by Kinyo Kang, the argument of counsel, applicable and controlling law, and "all other matters of record," denied her motion to intervene, finding that she had failed to file her claim under oath as required by OCGA § 18-4-95.

Lamb argues, however, that this ruling was not an adjudication on the merits but instead a ruling on a mere technicality. See OCGA

§ 9-12-42.[3] We disagree. Our Supreme Court has held that an adjudication on the merits does not necessarily require that a court reach the merits of a particular case:

> [A]n "adjudication on the merits" does not require that the litigation should be determined on the merits, in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases.

(Citations and punctuation omitted.) *Piedmont Cotton Mills v. Woelper*, 269 Ga. 109, 110 (498 SE2d 255) (1998). In *Piedmont Cotton Mills*, the plaintiffs had previously filed an action to quiet title to an easement, but the trial court denied them relief because their complaint contained no description of the land as required by OCGA § 23-3-62 (b). Id. When the plaintiffs subsequently filed a separate action for declaratory and injunctive relief regarding the same easement, the trial court found that the action was barred by res judicata.

The Supreme Court agreed, holding that the requirement that plaintiffs provide proof, whether in the form of a verified complaint or otherwise, of a land description was more than a legal technicality, but rather was "fundamental" to show that they were entitled to conclusive title to the easement. *Piedmont Cotton Mills v. Woelper*, 269 Ga. at 111. Thus, the Court held that the plaintiffs had simply failed to prove their case and if res judicata were not applied, the plaintiffs would, in effect, be given a second chance to proffer the evidence they failed to present in the first action:

> The lack of evidence was attributable to the [plaintiffs] and necessarily resulted in a negative "adjudication on the merits" of their claim, because the merits of their claim of title to the asserted easement were or could have been put in question under an adequate presentation of the case. It is contrary to the principle of res judicata to allow the [plaintiffs] a second opportunity to produce the evidence which they were required to present in the first action.

Id.

---

[3] That statute provides:
Where the merits were not and could not have been in question, a former recovery on purely technical grounds shall not be a bar to a subsequent action brought so as to avoid the objection fatal to the first. For a former judgment to be a bar to a subsequent action, the merits of the case must have been adjudicated.

Turning to this case, we note that this Court previously has recognized that Georgia's garnishment statutes are in derogation of the common law, and as a result, their provisions must be strictly construed. *Nat. Loan Investors v. Satran*, 231 Ga. App. 21, 22 (1) (497 SE2d 627) (1998). And our cases have held that the failure by claimants to file a claim under oath is a failure "to comply with necessary procedural requirements to enable them to assert their 'claim' to the garnished funds." (Citation and punctuation omitted.) Id. See also *Terrell v. Fuller*, 160 Ga. App. 56, 58 (286 SE2d 50) (1981). Thus by failing "procedurally to invest themselves with the prerequisite 'claimant' status, the trial court was without jurisdiction to consider their claim." (Citation omitted.) *Nat. Loan Investors v. Satran*, 231 Ga. App. at 22 (1).

While we have previously couched the failure to file a verified complaint as a procedural requirement, we find that such failure is more than a mere technicality in the context of res judicata. As in *Piedmont Cotton Mills*, Kinyo Kang's failure to file her claim under oath was a failure to present evidence to support her claim to the garnished funds. By failing to file a verified claim, she failed to present the necessary evidence to prove that she held a superior claim. Thus, it was her failure of proof that deprived the court of jurisdiction to consider her claim, and the trial court's denial of her motion to intervene had the effect of a "negative adjudication on the merits" barring any subsequent claims to the garnished funds. See also *Kaylor v. Rome City School Dist.*, 267 Ga. App. at 650 (failure to amend complaint to name school district as party barred subsequent claims against district that could have been determined in prior action under proper presentation and management of case).

In short, Kinyo Kang would have had her claim to the garnished funds considered by the court had she presented and managed her case properly. To fail to apply res judicata in this case, would allow Lamb, as Kinyo Kang's assignee, a second chance to present evidence that Kinyo Kang failed to provide in the garnishment proceeding. "As the assignee of [Kinyo] Kang's rights, Lamb could have no rights greater than [Kinyo] Kang." (Citation omitted.) *Lamb v. First Union Brokerage Svcs.*, 263 Ga. App. 733, 736 (1) (589 SE2d 300) (2003) (arising out of the same garnishment proceeding as this case).

Thus, summary judgment was proper on the ground of res judicata.[4]

2. Lamb next asserts that the trial court erred in allowing Stokes Lazarus to represent T-Shirt City because that corporation had

---

[4] In light of this holding, we need not address Lamb's other arguments under this enumeration.

ceased operations and ceased to exist. In addition to hearsay evidence, Lamb noted that in an affidavit purporting to traverse his service of process upon T-Shirt City, one of the Stokes Lazarus's attorneys averred that the corporation had ceased to exist and stated, upon information and belief, that it had been acquired by another corporation, which filed for bankruptcy in 1999.

Although in opposing the motion for summary judgment, Lamb questioned Stokes Lazarus's authority to represent T-Shirt City in this lawsuit, there is nothing in the record to indicate that he made a motion pursuant to OCGA § 15-19-7 or otherwise asked the trial court to rule on this issue.[5] "Appellate courts exist to review asserted error but where the defendant makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review." (Citation omitted.) *Sanders v. State*, 179 Ga. App. 168, 169 (2) (345 SE2d 677) (1986).

Although there is some indication in the briefs that this issue may have been raised at the hearing on the motion for summary judgment, Lamb specifically requested that the transcript of that hearing be excluded from the record. "It is the burden of the complaining party, including pro se appellants, to compile a complete record of what happened at the trial level, and when this is not done, there is nothing for the appellate court to review." (Citation and punctuation omitted.) *Farris v. State*, 236 Ga. App. 241 (511 SE2d 601) (1999).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 21, 2005.

T. Gordon Lamb, *pro se.*

*Stokes, Lazarus & Carmichael, William K. Carmichael, David M. Lilenfeld*, for appellees.

---

[5] To the extent that he is asserting that the trial court should have acted sua sponte in this regard, we find no basis in OCGA § 15-19-7 or elsewhere for such a contention. Moreover, we note that "[i]t is for the trial court to determine who represents a party in court, even if there is a dispute of fact, because representation and authority to act for a party in court go to the inherent powers of the court to orderly administer its cases." (Citations omitted.) *Peoples v. Consolidated Freightways*, 226 Ga. App. 265, 268 (1) (486 SE2d 604) (1997).