A07A1951. GOLD CREEK SL, LLC v. CITY OF DAWSONVILLE.
(660 SE2d 858)

BERNES, Judge.

The City of Dawsonville filed this lawsuit seeking specific performance of an agreement requiring Gold Creek SL, LLC to convey land and easement rights to the City for development of a wastewater treatment facility. Gold Creek filed a motion to dismiss the complaint and the City filed a motion for summary judgment. The trial court denied Gold Creek's motion and granted the City's motion. Gold Creek appeals, contending that the agreement was unenforceable since it failed to sufficiently identify the quantity and location of the property to be conveyed so as to satisfy the Statute of Frauds, and since the provision to landscape the property "in an aesthetically

---

pleasing manner" lacked certainty. For the reasons that follow, we affirm in part and reverse in part the trial court's decision denying Gold Creek's motion to dismiss. We reverse the decision granting the City's motion for summary judgment. Finally, since the trial court failed to rule upon Gold Creek's claim regarding the landscape provision, we remand the case for a ruling as to that claim.

The evidence shows that the City of Dawsonville entered into an agreement with Gold Creek SL, LLC ("Gold Creek") as well as Gold Creek Resort Associates, LLC and Gold Creek Land Associates, LLC (collectively "Resort/Land") for the development, construction, and operation of a wastewater treatment plant, spray fields, and out storage on the Gold Creek and Resort/Land property. The agreement required Gold Creek and Resort/Land to convey certain tracts of land to the City, including a lake designated as "Swan Lake" located on the golf course property to be used for holding treated water that would be sprayed onto the golf course; a tract for a wastewater lift station; and a five-acre tract of land referred to as the "Site" to be used to construct the wastewater treatment plant. The agreement also required Gold Creek and Resort/Land to provide easements to the property as necessary to carry out its purposes.

The agreement was signed, notarized, and recorded in the Dawson County real estate records. The agreement provided that it was to be binding upon the executing parties as well as their successors and assigns. The property transfers were to occur within 60 days of the City's issuance of written notice that it was ready to proceed with the funding, permitting, and construction of the wastewater treatment facility. When the City provided its written notice, however, Gold Creek failed to execute warranty deeds to effect the property transfers. Gold Creek's representative requested a 90-day extension of time for compliance with the agreement's terms, which the City granted. When the extended deadline passed and there had been no property transfers from Gold Creek, the City issued a demand letter seeking compliance with the agreement.

The City thereafter filed the instant lawsuit for breach of contract seeking specific performance, attorney fees, and expenses of litigation against Gold Creek; Resort/Land and its parent company, Ultima Holdings, LLC; and Southern Catholic, Inc., as successor in interest to the five-acre Site that was subject to the agreement. Southern Catholic later transferred the Site to the City as required by the agreement and was dismissed from the lawsuit. The City filed a motion for summary judgment as to all claims of its complaint, and

Gold Creek filed a motion to dismiss the City's claims. The trial court denied Gold Creek's motion, and granted the City's motion.[1]

1. Gold Creek argues that the trial court erred in denying its motion to dismiss since the parties' agreement failed to sufficiently describe and identify the property to be conveyed.

A motion to dismiss under OCGA § 9-11-12 (b) (6) should not be sustained unless (1) a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim and (2) the plaintiff could not possibly introduce evidence within the framework of the complaint to authorize a grant of the relief sought. *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 207-208 (1) (541 SE2d 33) (2000). The complaint's allegations and all possible inferences therefrom must be construed in favor of the plaintiff. Id. at 208 (1); *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 35 (643 SE2d 324) (2007). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes" and thus, a trial court is authorized to consider exhibits attached to and incorporated into the pleadings in its consideration of a motion to dismiss. OCGA § 9-11-10 (c); *Bakhtiarnejad*, 247 Ga. App. at 208 (1). In this case, the City's complaint attached the parties' agreement along with several other exhibits, which were properly considered by the trial court in its ruling upon the motion to dismiss.

> To satisfy the [S]tatute [of Frauds], the sales . . . contract must contain a clear and definite description of the property. Although the description need not be perfect, the contract must furnish the key to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate his intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable. A property description fails as indefinite if no particular tract of land is pointed out, but even a vague description will suffice if by competent parol

> evidence its precise location is capable of ascertainment and its identity can thus be established.

(Punctuation and footnotes omitted.) *Makowski v. Waldrop*, 262 Ga. App. 130, 132 (1) (a) (584 SE2d 714) (2003). Whether the agreement set forth an adequate property description was a legal question for the trial court. Id.

Here, the property descriptions at issue are those referenced in the agreement as "Swan Lake" and, for purposes of the easements, "any additional properties owned by Gold Creek and/or Resort/Land connected to or surrounding the Site and/or connected with [the] project . . . , including, but not limited to, easements to Swan Lake, easements for the entire Gold Creek Golf Course."[2] Accordingly, we address these property descriptions in turn below.

(a) The agreement required Gold Creek to "deed to the City that tract of property known as Swan Lake located on the Gold Creek golf course."

We conclude that the trial court was authorized to find that the agreement disclosed with sufficient certainty Gold Creek's intent with respect to the location of the lake. The agreement identified the lake at issue by its specific name, "Swan Lake." Furthermore, the agreement incorporated the approved "Master Plan" for the Gold Creek development, which designated specific roads abutting the development and included a diagram that designated Swan Lake and showed its location within the development. Additionally, the agreement incorporated an exhibit specifying the land lots and districts in Dawson County in which the Gold Creek development was located. Based upon the references to Swan Lake by its specific name in the agreement, combined with the Master Plan and other exhibits incorporated in the agreement, the agreement provided a key which indicated the intention to convey a particular tract of land, the precise boundaries and location of which could be determined by extrinsic

---

[2] Although Gold Creek presents argument as to a purportedly vague description of the five-acre Site to be transferred for the project, that property was no longer at issue because it had been transferred as required by the agreement. After Southern Catholic transferred the five-acre Site to the City in compliance with the agreement, the City no longer needed to seek specific performance as to that property. Because any issue regarding that property had been resolved, Southern Catholic was dismissed from the lawsuit prior to the trial court's entry of the summary judgment order.

The agreement further required Gold Creek to deed to the City the tract of property known as the "Lift Station," but Gold Creek's appellate brief presents no claim or argument as to that property. The City indicates that the Lift Station was transferred to the City prior to the filing of the lawsuit.

evidence. And, we cannot say that the City could not possibly introduce parol evidence within the framework of the complaint to authorize a grant of the relief sought. As such, Gold Creek's motion to dismiss the City's claim as to this property was properly denied. See *Sharpe v. Savannah River Lumber Corp.*, 211 Ga. 570, 571-572 (2) (87 SE2d 398) (1955) (property description using words "swamp land" furnished a key to identify property with the aid of parol testimony); *A. C. Alexander Lumber Co. v. Bagley*, 184 Ga. 352, 360 (1) (191 SE 446) (1937) (contract for the sale and conveyance of all the timber to be cut on a portion of the tract "known as the pond site" was not void for uncertainty when the contract furnished a key to identification of the tract known as the pond site, and the line of demarcation between the pond site and other land could be established by parol testimony); *Clark v. Cagle*, 141 Ga. 703, 707 (2) (82 SE 21) (1914) (contract describing property as "Humphrey Place" with acreage was not too vague and indefinite so as to render the contract unenforceable). Compare *White v. Plumbing Distrib.*, 262 Ga. App. 228, 230 (1) (585 SE2d 135) (2003) (holding that master plan could not serve as the basis for determining the boundaries for property to be conveyed, where contract also gave the parties "unfettered discretion" to determine the boundaries by means of a survey to be prepared in the future).

(b) The agreement also required Gold Creek to provide

> easements involving any additional properties owned by Gold Creek and/or Resort Land connected to or surrounding the Site and/or connected with [the] project as may be necessary to carry out the terms of [the] Agreement, including, but not limited to, easements to Swan Lake, easements for the entire Gold Creek Golf Course.

The trial court correctly determined that the property descriptions in the agreement for the "easements to Swan Lake" and the "easements for the entire Gold Creek Golf Course" — when considered in light of the Master Plan — disclosed with sufficient certainty Gold Creek's intention with respect to the location of those easements. The location of the Gold Creek Golf Course was provided by the agreement's terms reflecting that "Swan Lake [was] located on the Gold Creek [G]olf [C]ourse." The Master Plan illustrated the location of Swan Lake, and the location of the Gold Creek Golf Course could properly be ascertained in accordance with its direct proximity to Swan Lake. Accordingly, the agreement provided a key which indicated the intention by Gold Creek to convey easements on a particular tract of land, the precise boundaries of which could be established by parol evidence. As stated in Division 1 (a), we cannot

say that the City could not possibly introduce parol evidence within the framework of the complaint to authorize a grant of the relief sought. Hence, Gold Creek's motion to dismiss the City's claim as to this property was properly denied. See *Sharpe*, 211 Ga. at 571-572 (2); *Bagley*, 184 Ga. at 360 (1); *Chicago Title Ins. Co. v. Investguard, Ltd.*, 215 Ga. App. 121, 124 (2) (449 SE2d 681) (1994) ("[T]here is no absolute requirement of indicating the exact path of an easement. . . . If the premises are so referred to as to indicate the grantor's intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract.") (citation and punctuation omitted).

But, we reach a different conclusion as to the property description requiring an easement to "any additional properties owned by Gold Creek and/or Resort/Land connected to or surrounding the Site and/or connected with [the] project as may be necessary to carry out the terms of [the] Agreement." This easement provision fails to point to any specific property, and fails to disclose with sufficient certainty what the intention of Gold Creek was with respect to the location of those easements. While there is no confusion as to the identification of the five-acre Site,[3] the easement provision pertains to "any additional properties" that are "connected to or surrounding the Site and/or connected with [the] project." No particular tract or specific designation is provided for the additional property.

Because the "any additional properties" easement provision fails to specify any property location, the Master Plan cannot serve as a key to point unerringly to the property at issue. As a result, this portion of the easement provision is void and unenforceable as a matter of law. See *McClung v. Atlanta Real Estate Acquisitions*, 282 Ga. App. 759, 761-763 (1) (639 SE2d 331) (2006) (agreement was unenforceable when it failed to designate any particular tract or lot intended to be conveyed). The trial court therefore erred by failing to grant Gold Creek's motion to dismiss as to the "any additional properties" easement provision, and we must reverse the decision in part on this ground.

---

[3] Since Southern Catholic conveyed the five-acre tract as required by the agreement, "there is no evidence that the parties were confused about that portion of the property to be conveyed." *Kay v. W.B. Anderson Feed & Poultry Co.*, 278 Ga. App. 674, 675 (629 SE2d 408) (2006). The Resort/Land and Ultima defendants likewise did not express confusion as the property descriptions or identifications. Rather, they contended that they attempted to comply with the agreement but were unable to do so because of the breach by Gold Creek. In addition, these defendants asserted cross-claims against Gold Creek, alleging that Gold Creek had breached the agreement by failing to deed over the property to the City. We note, however, that the easement provision at issue was not for the Site, but rather for any additional property connected to or surrounding the Site.

2. Gold Creek also contends that the trial court erred in granting the City's motion for summary judgment. We agree. While we hold that the pleadings, including the agreement and Master Plan attached to the City's complaint, were sufficient to withstand Gold Creek's motion to dismiss as to the Swan Lake and Gold Creek Golf Course properties, the evidence did not establish without question the City's entitlement to summary judgment and specific performance of the agreement's property transfer provisions.

> Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, construing the evidence and all reasonable inferences most favorably to the nonmoving party.

(Punctuation and footnotes omitted.) *Makowski*, 262 Ga. App. at 130. See also OCGA § 9-11-56 (c). To be entitled to specific performance of an agreement to transfer title to property, the land must be clearly identified. Id. at 133 (1) (a). "A decree for specific performance operates as a deed. Therefore, the decree should contain a description as definite as that required to support a deed." Id.

As noted in Division 1, the agreement and the incorporated Master Plan provided a sufficient property description to furnish the key to identification of the land intended to be conveyed. Nonetheless, the agreement failed to establish the precise *boundaries* of those properties by metes and bounds or by quantity. Thus, the City was required to establish the precise boundaries and/or quantity of the Swan Lake and Gold Creek Golf Course properties by presenting extrinsic evidence that existed at the time of the execution of the agreement. The City failed to point to any such evidence in support of its motion for summary judgment. The evidence of record therefore failed to contain a description as definite as that required to support specific performance of the agreement. See *White*, 262 Ga. App. at 230 (1); *Kirkley v. Jones*, 250 Ga. App. 113, 116-117 (2) (550 SE2d 686) (2001). Compare *Grant v. Fourth Nat. Bank of Columbus*, 229 Ga. 855, 861-863 (2) (194 SE2d 913) (1972); *Nhan v. Wellington Square*, 263 Ga. App. 717, 721-722 (1) (589 SE2d 285) (2003). Accordingly, we reverse the trial court's decision granting the City's motion for summary judgment.[4]

---

[4] "[W]e note that nothing in OCGA § 9-11-56 limits the number of times a party may make a motion for summary judgment." *Eastern Car Liner v. Kyles*, 280 Ga. App. 362, 364 (1) (634

3. Gold Creek also contends that the agreement's provision to "landscape the water edge of Swan Lake in an aesthetically pleasing manner" was unenforceable as lacking certainty. Although Gold Creek raised this claim in a supplemental brief to the trial court, the trial court did not rule upon this issue. "Appellate courts exist to review asserted error but where the defendant . . . obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review." (Citation and punctuation omitted.) *Lamb v. T-Shirt City*, 272 Ga. App. 298, 303 (2) (612 SE2d 108) (2005). In the absence of a ruling from the trial court, we cannot reach the merits of this claim, and we must remand the case for the trial court's consideration as to whether the City is entitled to specific enforcement of the agreement's landscaping provision[5] in light of Gold Creek's argument.

*Judgment affirmed in part and reversed in part; case remanded with direction. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED APRIL 8, 2008.

` *Fox, Chandler, Homans, Hicks & McKinnon, Joseph A. Homans*, for appellant.
*Miles & Tallant, Dana B. Miles, Chamberlain, Hrdlicka, White, Williams & Martin, Gary S. Freed*, for appellee.

---

SE2d 129) (2006). Upon remand, either party may file a motion for summary judgment and seek a determination based upon the evidence and standard for summary adjudication.

[5] We note that the agreement contains a severability clause providing that if any provision is construed to be unenforceable, the remaining provisions that are enforceable shall remain in full force and effect. A separate determination is required as to whether the landscaping provision lacks mutuality or certainty so as to render it unenforceable as claimed by Gold Creek.