**SECOND DIVISION
MILLER, P. J.,
MERCIER, J., SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 5, 2021**

# In the Court of Appeals of Georgia

A20A2118. AMBROSIO et al. v. GIORDANO, JR. et al.

MILLER, Presiding Judge.

In this property action, the trial court ordered specific performance in favor of the sellers, directing the buyers, Rosa and Giovanni Ambrosio, to complete the purchase of two parcels of real estate in Tattnall County. When the buyers failed to comply, the trial court issued a money judgment in favor of the sellers. The buyers appeal, arguing that (1) there was a lack of mutual assent in the sale agreements; (2) the sale agreements contained certain conditions which rendered performance impossible; (3) the money judgment was unlawful for various reasons; and (4) the trial court erred in granting the sellers attorney fees under OCGA § 13-6-11 because the sellers did not properly assert a claim for these fees. Our review of the record shows that we lack jurisdiction over the buyers' claims regarding the money judgment

and that all of the remaining enumerations of error lack merit. We therefore affirm in part and dismiss in part.

"On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law." (Citation omitted.) *Simprop Acquisition Co. v. L. Simpson Charitable Remainder Unitrust*, 305 Ga. App. 564 (1) (699 SE2d 860) (2010).

So viewed, the record shows that Rosa learned through the Internet that the sellers were offering two parcels of real estate for sale in Tattnall County: a 54.9-acre parcel and a 10-acre parcel. The buyers understood that the properties consisted of a residence and acreage. After they viewed the properties, the buyers offered $195,000 for the residence and 10-acre parcel and $185,000 for the 54.9-acre parcel with furniture and other items included. The sellers accepted the offer, and the buyers returned to New York where they lived. The buyers later signed two sale agreements, each of which was subject to a 10-day due diligence period during which the buyers could refuse to proceed with the sales. The buyers inspected the properties after the due diligence period ended. Upon consulting with the inspector, Giovanni became

2

concerned by the acreage of wetlands on the properties and other "minor issues" regarding the properties. Giovanni requested a reduction in the amount of $6,000, but the sellers declined. The buyers told the realtor that they were no longer interested in the property. They did not attend the closings which were scheduled for January 3, 2017, and they did not return to Georgia.

In September 2017, the sellers filed a complaint for specific performance to convey the real estate, claiming that the buyers did not terminate the agreements during the due diligence period and that they no longer had the right to do so. In the complaint, the sellers also requested that they be awarded attorney fees for the buyers' alleged "stubborn and litigious actions." The sellers then filed a motion for summary judgment, and the buyers responded and filed a cross-motion for summary judgment. The trial court granted the sellers' motion for summary judgment, denied the buyers' cross-motion for summary judgment, and determined that the sellers were entitled to specific performance of the sale agreements. On May 28, 2019, the trial court issued a final judgment awarding the sellers $27,000 in attorney fees and litigation expenses under OCGA § 13-6-11. The buyers filed their initial notice of appeal and amended notice of appeal on June 24, 2019.

After the trial court awarded specific performance, the sellers filed a motion for contempt on the basis that the buyers had not yet bought the properties. The trial court denied the sellers' motion because the court had not established a date and time by which the buyers were obligated to perform. The trial court then mandated that the buyers contact the sellers' realtor within 30 days to schedule the closings and further ordered that the closings occur within 60 days. In June 2019, the sellers filed another motion for contempt, arguing that the buyers had not contacted their realtor within the time mandated by the court and that the closings had not yet occurred. In September 2019, the trial court issued an order in which it (1) found the buyers in contempt; (2) issued a money judgment in the amount of $380,000 plus post-judgment interest; and (3) directed the sellers to deed the land to the buyers within 10 days of the satisfaction of the money judgment. The buyers filed a supplemental notice of appeal on June 22, 2020.

1. Preliminarily, we address the sellers' motion to dismiss the buyers' appeal, granting it in part and denying it in part. In their motion, the sellers argue that (1) the buyers cannot challenge the award of attorney fees because they agreed to the order; and (2) the buyers did not file a timely notice of appeal from the contempt and money judgment order.

4

The record before the Court does not support the sellers' argument that the buyers agreed to the attorney fee award. It shows that the buyers withdrew their jury trial demand on the issue but that they "retain[ed] all defenses" on the claim. In another filing, the buyers plainly argued that the sellers were not entitled to fees under OCGA § 13-6-11. And while the sellers point to a supplemental record as evidence for their argument, no supplemental record appears in this case.[1] Accordingly, we have jurisdiction over the buyers' challenge to the award of attorney fees.

The sellers are correct, however, that the buyers cannot challenge the contempt and money judgment order because it was issued after the buyers filed their notices of appeal. The trial court entered the attorney fee award on May 28, 2019. This was a final appealable judgment because no other claims were pending before the trial court once the attorney fees issue was resolved.[2] OCGA § 5-6-34 (a) (1). The buyers then filed timely notices of appeal. The contempt and money judgment order,

_____

[1] The buyers state that their counsel negotiated as to the final amount of attorney fees but they never agreed that the sellers were entitled to attorney fees.

[2] The sellers argue that the May 28, 2019 attorney fee award was not a final judgment because the buyers had until May 31, 2019 to close on the sales, as provided for in the court's April 1, 2019 order setting the deadlines for the closings. This argument fails because when the trial court entered the attorney fee award, the court had adjudicated all the pending claims. See *Sotter v. Stephens*, 291 Ga. 79, 84 (727 SE2d 484) (2012).

5

however, was issued after the filing of the notices of appeal, on September 24, 2019. The buyers did not file a timely notice of appeal from that order, but instead, filed a "supplement" to their previous notices of appeal nine months later in June 2020. OCGA § 5-6-38 (a) ("A notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of[.]"). We recognize that under OCGA § 5-6-34 (d), we review "all judgments, rulings, or orders raised on appeal which may affect the proceedings below and which were rendered subsequent to the first judgment, ruling, or order held erroneous." Nevertheless, because the contempt and money judgment order in this case was entered subsequent to the buyers' *notices of appeal*, we lack jurisdiction to consider the buyers' challenge to that order. *Norman v. Ault*, 287 Ga. 324, 330-331 (6) (695 SE2d 633) (2010) (Supreme Court lacked jurisdiction over enumeration regarding contempt order where the order was issued after the final judgment and filing of the application for discretionary appeal); *Bloomfield v. Bloomfield*, 282 Ga. 108, 112 (5) (646 SE2d 207) (2007) (appellant could not enumerate rulings as error where they were entered after he filed his notice of appeal). See also *Sewell v. Cancel*, 295 Ga. 235, 240 n.3 (759 SE2d 485) (2014) (recognizing the Supreme Court of Georgia's precedent "involving attempts by appellants to effectively amend the original notice of appeal to encompass orders

6

subsequently issued."). Accordingly, we will only review the buyers' enumerations of error concerning the summary judgment order and the award of attorney fees.

2. First, the buyers argue that the sale agreements were unenforceable due to a lack of mutual assent. They contend that the acreage of the wetlands was significantly larger than originally disclosed and that this was a material fact which affected the nature of the properties being purchased. We determine that the parties mutually assented to the terms of the agreements.

In order for a court of equity to decree the specific performance of a contract for the sale of land, there must be

> a definite and specific statement of the terms of the contract. The contract must identify the land to be sold with reasonable definiteness by describing the particular tract or furnishing a key by which it may be located with the aid of extrinsic evidence. Because a decree for specific performance operates as a deed, the description in the decree should be as definite as that required for a deed.

(Citations and punctuation omitted.) *Scheinfeld v. Murray*, 267 Ga. 622, 623 (1) (481 SE2d 194) (1997). "The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the *quantity and location* of the land

therein referred to, so that its identification is practicable." (Citation omitted; emphasis supplied.) *Gold Creek SL, LLC v. City of Dawsonville*, 290 Ga. App. 807, 809 (1) (660 SE2d 858) (2008). On the issue of mutual assent, in some cases

> the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

(Citation omitted.) *Terry Hunt Constr. Co. v. AON Risk Svcs., Inc.*, 272 Ga. App. 547, 552 (3) (613 SE2d 165) (2005). In other cases, however, "the only evidence of the parties' intent is the express language of the contract[.]" Id.

The buyers do not identify any extrinsic evidence surrounding the making of the sale agreements that is pertinent to the amount of wetlands on the properties. Although the buyers rely on Rosa's affidavit, in which she avers that "the wetlands acreage had been misrepresented," the buyers do not support this conclusory statement by identifying any evidence showing that the sellers made representations to them concerning the acreage of any wetlands. See *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650 (3) (b) (497 SE2d 397) (1998) ("Conclusory statements in affidavits unsupported by factual evidence are insufficient to avert summary

8

judgment.") (citation omitted). Further, the record does not contain any evidence that the buyers engaged in correspondence or discussions with the sellers regarding what portion of the properties, if any, constitutes wetlands. Compare *Moreno v. Smith*, 299 Ga. 443, 446 (1) (788 SE2d 349) (2016) (jury had to decide whether an enforceable contract existed where there was evidence of discussions between the parties about the land being a gift, which was bolstered by other evidence of the circumstances surrounding the purported contract).

Instead, the only evidence in this case of the parties' intent appears to be the express language of the agreements. And, as discussed above, a sufficient property description discloses a grantor's intent with respect to the *quantity and location* of the land. *Gold Creek SL, LLC*, supra, 290 Ga. App. at 809 (1). Insofar as the buyers take no issue with the agreements' property descriptions as they pertain to the quantity and location of the properties, the trial court correctly ruled that the parties mutually assented to the terms of the agreements. Compare *Plantation Land Co. v. Bradshaw*, 232 Ga. 435, 440 (IV) (207 SE2d 49) (1974) (enforcement of the contract through specific performance was not permissible where the contract gave "no definite indication of the size, shape or location" of the land at issue). Thus, the agreements do not fail for a lack of mutuality.

3. Next, the buyers contend that because each sale was contingent on the other closing at the same time, these "conflicting" conditions made it impossible for either party to perform on the agreements. We find that the trial court correctly rejected the buyers' impossibility defense.

"Impossible, immoral, and illegal conditions are void and are binding upon no one." OCGA § 13-3-5. "And impossibility of performance is a defense to the enforcement of a contract." *Allen v. CFYC Constr., LLC*, 354 Ga. App. 890, 894 (2) (842 SE2d 297) (2020). The contract for the sale of the 54.9-acre section provided: "This contract is contingent on the contract at 401 Laddie Kennedy Road, Reidsville closing at the same time." Similarly, the contract for the 10-acre section provided that the agreement was contingent on the sale for the 54.9-acre section closing at the same time. These conditions were specifically negotiated by the parties. According to the buyers, it was impossible for them and the sellers to perform because the acreage sale did not close, preventing the home sale from closing, and vice versa. But as the trial court recognized, the buyers were the source of this "impossibility." There is no dispute that the sellers attended the scheduled closings on the date to which the parties had agreed. The fact that the buyers admittedly lost interest in the properties and willfully failed to attend the closing does not show that it was impossible for both

sales to be consummated at the same time. "A party cannot by its own act place itself in a position that renders it unable to perform, then plead that this inability to perform provides an excuse for nonperformance." Williston on Contracts § 77:9 (4th ed.); see also *Bright v. Stubbs Properties, Inc.*, 133 Ga. App. 166, 166-167 (210 SE2d 379) (1974) ("It is generally well settled that subjective impossibility, that is, impossibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation.") (citation omitted). Cf. *United Ben. Soc. of America v. Freeman*, 111 Ga. 355 (36 SE 764) (1900) (facts offered as an excuse for not performing in the time required by the insurance contract did not show that it was impossible for the insured to have complied with the condition precedent). Similarly, the buyers' refusal to attend the closings is not a legitimate basis for arguing that the sellers could not possibly meet their contractual obligations; the buyers' decision to not continue with the sales preceded the sellers' inability to perform. See, e.g., *J & E Builders, Inc. v. R C Dev., Inc.*, 285 Ga. App. 457, 458-459 (2) (646 SE2d 299) (2007) ("Where a contract provides for performance of an obligation, the party bound to perform the obligation may be relieved and the obligation waived, where the other party to the contract repudiates the obligation by act or word, or takes a position which renders

11

performance of the obligation useless or impossible.") (citation omitted). Accordingly, the trial court properly rejected the buyers' impossibility argument and denied their motion for summary judgment.

Further, insofar as the buyers argue that the conditions were ambiguous and created fact issues for a jury's determination, the buyers failed to raise this argument in their response to the sellers' summary judgment motion or in their cross-motion for summary judgment, and the trial court did not address such an argument in its order.[3] "[A]fter summary judgment is granted to a movant/plaintiff, a nonmovant/defendant may not raise an argument or defense not asserted in the trial court." *MALAGA Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 766 (4) (431 SE2d 746) (1993). Accordingly, this contention has not been preserved for appellate review. See *Bramley v. Nationwide Affinity Ins. Co. of America*, 345 Ga. App. 624, 626 (1) (814 SE2d 770) (2018) (declining to review appellant's argument that a policy term was ambiguous because the argument was not raised in the appellant's response to the

---

[3] Additionally, there are no hearing transcripts in the record, and we cannot presume that the buyers raised an ambiguity argument in any hearing. *Hann v. Harpers Boutiques Intl.*, 284 Ga. App. 531, 533 n.5 (1) (644 SE2d 337) (2007) (discussing the absence of the hearing transcript and explaining that the appellants had not met their responsibility for providing a complete record showing that the issues raised on appeal were properly and timely raised in the court below).

12

summary judgment motion or at the hearing on the motion for summary judgment) (physical precedent only). Accordingly, the trial court properly granted summary judgment to the sellers.

4. Lastly, the buyers contend that the trial court erred by awarding attorney fees to the sellers because they did not properly assert a claim for attorney fees under OCGA § 13-6-11 in their initial complaint or amended complaint. This argument is belied by the record.

"An award of attorney fees is authorized under OCGA § 13-6-11 where a plaintiff specifically prays for attorney fees and refers either to the Code section or to the criteria set forth therein, by alleging the defendant acted in bad faith in the underlying transaction, was stubbornly litigious, or caused the plaintiff unnecessary trouble and expense." *Goldsmith v. Peterson*, 307 Ga. App. 26, 29 (2) (703 SE2d 694) (2010). In their initial complaint, the sellers made a specific prayer to recover attorney fees due to the buyers' "stubborn and litigious actions." Thus, the sellers properly pleaded a claim for attorney fees under OCGA § 13-6-11.[4] Id. (defendants properly raised the issue of attorney fees under OCGA § 13-6-11 where their counterclaim

[4] Indeed, in their answer to this complaint, the buyers asserted that they had not been stubbornly litigious and that the sellers' claim for attorney fees was barred.

13

tracked the language of the statute and they made a specific prayer to recover their attorney fees).

Given the foregoing, we affirm the trial court's grant of summary judgment to the sellers, the denial of the buyers' cross-motion for summary judgment, and the award of attorney fees to the sellers. We dismiss the buyers' challenge to the trial court's contempt and money judgment order for their failure to timely appeal from that decision.

*Judgment affirmed in part and dismissed in part. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur.*